## PEOPLES BANK v. ECCLES et al.
### Civil Action No. 32200.

District Court of the United States for the District of Columbia.

March 14, 1946.

J. Leonard Townsend, Edward M. Curran, U. S. Atty., and George B. Vest, all of Washington, D. C., for the motion.

Samuel B. Stewart and Blake, Voorhees & Stewart, all of New York City, Fulton, Walter & Halley, of Washington, D. C., and Sanner, Fleming & Irwin, of Los Angeles, Cal., opposed.

HOLTZOFF, Justice.

This is an action for a declaratory judgment. The plaintiff is the Peoples Bank, a banking corporation organized under the laws of the State of California. The defendants are members of the Board of Governors of the Federal Reserve System. The purpose of the action is to secure an adjudication that one of the conditions attached to the plaintiff's admission to membership in the Federal Reserve System is invalid, null and void. The defendants move to dismiss the complaint on the ground that no justiciable controversy is presented and that, therefore, the action does not lie.

It appears from the complaint that the Peoples Bank was admitted to membership in the Federal Reserve System on May 6, 1942, subject to the following condition:

"4. If, without prior written approval of the Board of Governors of the Federal Reserve System, Transamerica Corporation or any unit of the Transamerica group, including Bank of America National Trust and Savings Association, or any holding

company affiliate or any subsidiary thereof, acquires, directly or indirectly, through the mechanism of loans for the purpose of acquiring bank stock, or in any other manner, any interest in such bank, other than such as may arise out of usual correspondent bank relationships, such bank, within 60 days after written notice from the Board of Governors of the Federal Reserve System, shall withdraw from membership in the Federal Reserve System."

In other words, if the Transamerica Corporation, or any of its affiliates or subsidiaries, were to acquire any interest in the Peoples Bank, the latter is to withdraw from membership in the Federal Reserve System on notice from the Board of Governors.

The complaint further alleges that subsequently to the admission of the Bank to membership in the Federal Reserve System, the Transamerica Corporation, without the plaintiff's assistance or prior knowledge, purchased 540 shares of the plaintiff's capital stock, and now owns the stock so acquired. The Bank informed the defendants of these transactions and demanded a cancellation of the above-mentioned condition. This demand has not been complied with. It is further alleged in substance that in the light of the circumstances, the existence of the condition is a hindrance to the plaintiff's business, as the plaintiff is subject to the constant and continuing threat or possibility of an incalculable loss, which would accrue if the bank were deprived of its membership in the Federal Reserve System. It is not denied that the Board of Governors of the Federal Reserve System is empowered to prescribe conditions on which banks may join the System (U.S.C.A., Title 12, Sec. 321). It is contended, however, that the imposition of the condition here involved was beyond the authority of the Board. The bank seeks an adjudication that the condition is invalid.

The question presented on this motion to dismiss the complaint is whether a justiciable controversy is involved, which may form the basis for a declaratory judgment. In order to reach a determination of this issue, it is first necessary to consider the basic principles governing actions for declaratory judgments.

Actions for declaratory judgments represent a comparatively recent development in American jurisprudence. The traditional and conventional concept of the judicial process has been that the courts may act only in case a litigant is entitled to a coercive remedy, such as a judgment for damages or an injunction. Until a controversy had matured to a point at which such relief was appropriate and the person entitled thereto sought to invoke it, the courts were powerless to act. At times, however, there may be an actual dispute as to the rights and obligations of the parties, and yet the controversy may not have ripened to a point at which an affirmative remedy is needed. Or, this stage may have been reached and yet the party entitled to seek the remedy may fail or decline to take steps to enforce it. For example, the maker or indorser of a promissory note may have stated to the payee that the instrument would not be honored at maturity, because, perhaps, his signature is claimed to have been forged or procured by fraud or affixed without his authority. The payee had to wait until payment was due before appealing to the courts. It might have been important for him to ascertain in advance whether the note was a binding obligation and whether he might rely on it and list it among his assets. Nevertheless, he could receive no judicial relief until the instrument became due and was dishonored. Or it might have been necessary for a person to determine whether he was bound by some contractual provision which he deemed void. In that event, if he desired to contest the matter, he had to assume the risk and to hazard the consequences of committing a breach and then await a suit. Or, the owner of a patent might assert that a manufacturer was infringing his monopoly, while the latter contended that his product was not an infringement or that the patent was invalid. The manufacturer was helpless, however, to secure an adjudication of the issue, but had to pursue his course of action and await suit for infringement, unless he preferred to yield and discontinue his activity.

The purpose of actions for declaratory judgments is to provide a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy, or in which the party entitled to it fails to invoke it. The privilege of bringing such actions places a new weapon or implement at the disposal of the courts. It does not expand their jurisdiction. It

introduces merely a new and more flexible procedure for determining controversies and adjudicating rights and obligations. It enlarges the judicial process and renders it more pliant and malleable.

■ As judicial tribunals exist for the purpose of deciding actual controversies, it is not within the purview of this highly desirable and wholesome innovation that the courts shall render advisory opinions or answer abstract questions to satisfy the convenience or the curiosity of the inquirer. If the action is brought in a Federal court, this limitation and qualification is emphasized by the constitutional provision restricting the jurisdiction of the Federal judiciary to the decision of "cases and controversies." U.S.C.A.Const. art. 3, § 2. Actual controversies frequently arise, however, under circumstances requiring solely a declaration of rights without an award of coercive relief. In such a situation an action for a declaratory judgment may be maintained.

The declaratory judgment procedure has been known in England for a great many years. In 1922, after its adoption by a number of States, the National Conference of Commissioners on Uniform State Laws drafted and recommended a uniform Declaratory Judgment Act, which has been enacted by a great many of the States.[1] The Federal Declaratory Judgment Act became law in 1934.[2] The report of the Senate Committee on the Judiciary, which recommended the passage of the legislation (S. Rept. No. 1005, 73d Cong., 2d Sess.) contains the following illuminating statements:

"The procedure has been especially useful in avoiding the necessity, now so often present, of having to act at one's peril or to act on one's own interpretation of his rights, or abandon one's rights because of a fear of incurring damages. So now it is often necessary, in the absence of the declaratory judgment procedure, to violate or purport to violate a statute in order to obtain a judicial determination of its meaning or validity. * * * So now it is often necessary to break a contract or a lease, or act upon one's own interpretation of his rights when disputed, in order to present to the court a justiciable controversy. In jurisdictions having the declaratory judgment procedure, it is not necessary to bring about such social and economic waste and destruction in order to obtain a determination of one's rights. * * * Persons now often have to act at their peril, a danger which could be frequently avoided by the ability to sue for a declaratory judgment as to their rights or duties."

■ The statute should be liberally construed, in accordance with the general canon of statutory construction applicable to remedial statutes. Reliance Life Ins. Co. v. Burgess, 8 Cir., 112 F.2d 234; Mississippi Power & Light Co. v. City of Jackson, 5 Cir., 116 F.2d 924; Oil Workers Inter-Union v. Texoma Nat. Gas Co., 5 Cir., 146 F.2d 62.

One of the leading cases interpreting and applying the Federal statute is Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000, in which an insurance company was permitted to maintain an action for a declaratory judgment to secure an adjudication that a life insurance policy had lapsed for non-payment of premiums and had not matured by an alleged total and permanent disability of the insured. The court held that this dispute presented a justiciable controversy cognizable by the courts under the Declaratory Judgment Act. Mr. Chief Justice Hughes made the following observations on this subject (pages 239-241 of 300 U.S., page 463 of 57 S.Ct., 81 L.Ed. 617, 108 A.L.R. 1000):

"The Declaratory Judgment Act of 1934, in its limitation to 'cases of actual controversy,' manifestly has regard to the constitutional provision and is operative only in respect to controversies which are such in the constitutional sense. The word 'actual' is one of emphasis rather than of definition. Thus the operation of the De-

---

[1] For leading State cases on this subject, see Sheldon v. Powell, 99 Fla. 782, 128 So. 258; and Kariher's Petition, 284 Pa. 455, 131 A. 265.

[2] U.S.C.A., Title 28, § 400:

"(1) In cases of actual controversy (except with respect to Federal taxes) the courts of the United States shall have power upon petition, declaration, complaint, or other appropriate pleadings to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, and such declaration shall have the force and effect of a final judgment or decree and be reviewable as such."

claratory Judgment Act is procedural only. In providing remedies and defining procedure in relation to cases and controversies in the constitutional sense the Congress is acting within its delegated power over the jurisdiction of the federal courts which the Congress is authorized to establish. * * * Exercising this control of practice and procedure the Congress is not confined to traditional forms or traditional remedies. * * * In dealing with methods within its sphere of remedial action the Congress may create and improve as well as abolish or restrict. The Declaratory Judgment Act must be deemed to fall within this ambit of congressional power, so far as it authorizes relief which is consonant with the exercise of the judicial function in the determination of controversies to which under the Constitution the judicial power extends.

"A 'controversy' in this sense must be one that is appropriate for judicial determination. * * * A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. * * * The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. * * * It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. * * * Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages. * * * And as it is not essential to the exercise of the judicial power that an injunction be sought, allegations that irreparable injury is threatened are not required."

In Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826, the court sustained the right of an insurance company to secure a declaratory judgment to the effect that under the circumstances presented it was not liable to indemnify the defendant, who was the insured named in a liability insurance policy issued by the company. Mr. Justice Murphy made the following comments on this point (page 273 of 312 U.S., page 512 of 61 S.Ct., 85 L.Ed. 826):

"The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-242, 57 S.Ct. 461, 463, 464, 81 L.Ed. 617, 108 A.L.R. 1000. It is immaterial that frequently, in the declaratory judgment suit, the positions of the parties in the conventional suit are reversed; the inquiry is the same in either case. Nashville, C. & St. L. R. Co. v. Wallace, supra, [288 U.S. 249] at page 261 [53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191].[3]

"That the complaint in the instant case presents such a controversy is plain."

It has been frequently held that actions for declaratory judgments may be maintained by insurance carriers to determine the extent of the coverage of insurance policies issued by them, or their liability under a specific set of facts. Hepburn v. Pennsylvania Indemnity Corp., 71 App.D.C. 257, 109 F.2d 833; Pennsylvania Casualty Co. v. Upchurch, 5 Cir., 139 F.2d 892; Employers Liability Assur. Corp. v. Ryan, 6 Cir., 109 F.2d 690.

In Altvater v. Freeman, 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed. 1450, an action was brought to adjudicate that certain patents were invalid or in the alternative, that they were covered by a certain license agreement. The Court held that the action might be maintained. It remarked that unless the plaintiff could obtain an adjudication of his rights, he incurred the risk of judgments for damages in infringement suits and added that "It was the function of the Declaratory Judgment Act to afford relief against such peril and in-

---

[3] This case originated in this jurisdiction. Mr. Chief Justice Groner in his opinion in the United States Court of Appeals (64 App.D.C. 175, 99 F.2d 408 at pages 413, 414) discusses this aspect of the litigation in considerable detail.

security." (page 365 of 319 U.S., page 1118 of 63 S.Ct., 87 L.Ed. 1450.)

In Dewey & Almy Chemical Co. v. American Anode, 3 Cir., 137 F.2d 68, it was held that an action for declaratory judgment would lie to determine the validity of a patent. The same conclusion was reached in E. Edelmann & Co. v. Triple-A Specialty Co., 7 Cir., 88 F.2d 852, 854, in which Judge Lindley stated:

"It was the congressional intent to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued."

In Davis v. American Foundry Equipment Co., 7 Cir., 94 F.2d 441, 115 A.L.R. 1486, such an action was upheld for the purpose of adjudicating the validity of a contract.

In Perkins v. Elg, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320, affirming 69 App.D.C. 175, 99 F.2d 408, an action for a declaratory judgment against the Secretary of Labor was held maintainable for the purpose of determining the plaintiff's citizenship.[3]

In Tennessee Coal Co. v. Muscoda Local, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, the Supreme Court upheld an action for a declaratory judgment for the purpose of determining whether in computing the number of working hours in coal mines under the Fair Labor Standards Act, 29 U.S. C.A. § 201 et seq., it was proper to include time consumed by employees in traveling to the place of work from the entrance to the mine.

In Samuel Goldwyn, Inc., v. United Artists Corp., 3 Cir., 113 F.2d 703, it was held that an action would lie to secure a declaratory judgment that certain contracts had been terminated.

In Mississippi Power & Light Co. v. City of Jackson, 5 Cir., 116 F.2d 924, 925, an action was brought to secure a determination as to the validity and construction of certain contract provisions. In his opinion Judge Hutcheson made the following observations:

"While the declaratory judgment act has not added to the jurisdiction of the federal courts, is has added a greatly valuable procedure of a highly remedial

nature. Extending by its terms to all cases of actual controversy 'except with respect to Federal taxes', it should be, it has been given a liberal construction and application to give it full effect. * * * a normal, indeed, a common use of it has been in the construction of contracts and the declaration of rights under them."

The latest case on this point in this jurisdiction is Farrall v. District of Columbia Amateur Athletic Union, App.D.C., 153 F.2d 647, in which the United States Court of Appeals upheld the right of a member of the District of Columbia Amateur Athletic Union to secure an adjudication as to his right to obtain a sanction to engage in an exhibition.

■ Accepting the foregoing principles and authorities as a guide, it is clear that a justiciable controversy exists in the instant case, warranting recourse to an action for a declaratory judgment. One of the conditions on which the plaintiff was admitted to membership in the Federal Reserve System, was that on demand of the Board of Governors, the plaintiff would withdraw from the System if any of its shares of stock were acquired by the Transamerica Corporation, or any of its subsidiaries or affiliates. Supervening events have created a situation enabling the defendants to invoke this condition. The plaintiff claims that the condition is ultra vires and illegal, and has made a demand on the Board of Governors for its cancellation. The Board maintains the validity of the condition. In fact, counsel for the defendants, with commendable candor and disarming emphasis, so admitted in open court on the argument of this motion. In view of events that have transpired, the condition hangs over the bank like the sword of Damocles ready to strike whenever the Board of Governors chooses to wield the weapon at its command. In the words of Mr. Justice Douglas in Altvater v. Freeman, 319 U.S. 359, 365, 63 S.Ct. 1115, 1118, 87 L.Ed. 1450, "It was the function of the Declaratory Judgment Act to afford relief against such peril and insecurity."

The plaintiff is not seeking an answer to a hypothetical question, or a solution of a theoretical or abstract problem. In making its future plans and in protecting its

---

[3] This case originated in this jurisdiction. Mr. Chief Justice Groner in his opinion in the United States Court of Appeals (64 App.D.C. 175, 99 F.2d 408 at pages 413, 414) discusses this aspect of the litigation in considerable detail.

816

business, it is essential from the standpoint of the plaintiff that the validity of the condition be adjudicated. Failure to enforce the condition thus far, would hardly estop or preclude the defendants or their successors from doing so at some future time. To say that no actual controversy exists between the parties is not realistic.

No reason is perceived why the defendants should oppose a decision on this issue at this time. If the matter were not subject to any judicial review under any circumstances, their attitude would be understandable. If, however, the defendants should at any time seek to enforce the condition, a judicial adjudication as to its validity could be secured by the plaintiff in an action for an injunction. It seems desirable as a matter of orderly administration and substantial justice that such a determination be had at an early stage of the controversy. It does not seem to the court that a governmental or quasi-governmental agency should interpose obstacles or place obstructions in the way of an early judicial determination of the validity of its potential actions, if their legality is challenged by a party subject to them. No prejudice to the defendants is discernible from such an adjudication.

The authorities on which the defendants rely do not dispose of the question. They may be divided into three groups. First, some of the cases involve statutes to which criminal sanctions are attached. Obviously, it is inappropriate to render a declaratory judgment for the purpose of determining whether a specific activity would constitute a crime. Such matters are left to determination by criminal prosecutions. Another group comprises cases involving attempts to secure determinations as to the validity of prospective actions of administrative bodies acting in a quasi-judicial capacity. To do so, however, would partially at least deprive the administrative body of its jurisdiction, and would contravene the principle that if a specific mode of reviewing the action of such an agency is provided by statute, the prescribed remedy is exclusive. The third category comprehends cases in which the defendant had no final authority over the matter in dispute. Manifestly, in such instances, a declaratory judgment would deal with a moot case. None of the authorities cited by the defendants supports their contention that no justiciable controversy is presented in the instant case.

The defendants also call attention to Peoples Bank v. Federal Reserve Bank of San Francisco, D.C., 58 F.Supp. 25, decided by the District Court of the United States for the Northern District of California, in which an action was brought by the present plaintiff against the Federal Reserve Bank of San Francisco, the Federal Reserve Agent, and the Board of Governors of the Federal Reserve System, to annul and enjoin the enforcement of the condition involved in this action. The action was dismissed as against the Board of Governors on the ground that the Board was not an inhabitant of the Northern District of California, and, therefore, might not be sued therein without its consent. It was dismissed as against the Federal Reserve Bank of San Francisco and against the Federal Reserve Agent on the ground that they had no authority to act and that there was no justiciable controversy as to them, inasmuch as the administrative power to expel banks from the Federal Reserve System is vested by law solely in the Board of Governors. The opinion did not pass either on the validity of the condition, or on the propriety of maintaining an action for a declaratory judgment against the Board of Governors of the Federal Reserve System in the jurisdiction in which they are subject to suit. Consequently, the case does not bear upon the issues presented in this action.

I conclude that the complaint presents a justiciable controversy which may be appropriately adjudicated in an action for a declaratory judgment.

Motion to dismiss the complaint is denied.