## ALTVATER ET AL. v. FREEMAN ET AL.

No. 696. Argued April 19, 1943.—Decided May 24, 1943.

*Messrs. Edmund C. Rogers* and *Lawrence C. Kingsland* for petitioners.

*Mr. Marston Allen* for respondents.

Mr. Justice Douglas delivered the opinion of the Court.

This suit, lodged in the federal District Court by reason of diversity of citizenship, was brought by respondents for specific performance of a license agreement under reissue patent No. 20,202 issued to Freeman in 1936 for a cut-out machine for shoe uppers, it being alleged that the reissue patent was substituted under the agreement for the original patent—No. 1,681,033.[1] The bill alleged that contrary to the provisions of the license agreement petitioners were manufacturing and selling certain devices which infringed the reissue patent and that they had not confined themselves to the territory in which the license agreement permitted them to make sales of the patented article. The bill asked for specific performance, for an injunction, and for an accounting. Petitioners answered denying generally the allegations of the bill and setting up various defenses. They charged among other things that the two reissue patents obtained on the surrender of the original patent were invalid; and they asserted that while they had made payments of royalties under the reissue patents, they did so in protest and that those payments did not substitute the reissue patents for the original patent under the license agreement. Petitioners also filed a counterclaim praying for a declaratory judgment. They alleged in the counterclaim that the license agreement did not cover the reissue patents; that they were willing to pay royalties if the agreement covered the reissues and if they

---

[1] Two reissue patents—No. 20,202 and No. 20,203—were obtained for Patent No. 1,681,033 which was surrendered. The contract was based upon the latter patent. It licensed petitioners to make certain dies coming within the original patent, within a limited territory and for use with certain machines, upon payment of royalties. Petitioners likewise agreed not to make any machines coming within the original patent; and they waived the right to contest the validity of the patent during its life.

were valid; that the reissues were not valid, but that if petitioners cancelled the license agreement and refused to pay any royalties under it, they would be subject to infringement suits. They accordingly alleged that in order to protect the business built up in good faith under the license, an adjudication of the controversy and dispute between the parties was necessary. They prayed that the reissue patents be declared invalid, but that, if they were held to be valid, the license agreement be extended to them. In a reply to the counterclaim, respondents denied its essential allegations and alleged among other things that there was no justiciable controversy between the parties as set forth in the counterclaim and therefore that petitioners had no right to the declaratory judgment.

A brief summary of earlier litigation between the parties will help sharpen the outlines of the present controversy. The license under the original patent was executed in 1929. Shortly thereafter petitioners marketed a machine known as Model T, which respondents claimed violated the agreement. They accordingly brought a suit for specific performance of the agreement, charging violation of its covenants and infringement. The court held in *Freeman* v. *Altvater,* 66 F. 2d 506, that the validity of the patent was not in issue, since petitioners, being licensees, were estopped to assert its invalidity. The court concluded, however, that the machine did infringe. An accounting was ordered. Respondents endeavored later on to have the accounting cover the accused devices involved in the present suit. That effort was not successful. Meanwhile *Premier Machine Co.* v. *Freeman,* 84 F. 2d 425, was decided. It was a suit for infringement of the original patent, the defense being invalidity. Of the 94 claims of the patent, 26 were involved in that suit. The court held that only three of that group were valid. That was in June 1936. In November 1936 Freeman filed a dis-

claimer covering all claims held invalid in the *Premier Machine* case. Later in 1936 he surrendered his original patent and obtained reissue patents. The invalidity of the reissue patents was asserted in the present suit on the grounds, among others, that the disclaimer was improper and that the reissue patents were devoid of patentable subject matter.

The District Court after a hearing found that the accused devices did not infringe respondents' reissue patents; that the decision in the *Premier Machine* case, 84 F. 2d 425, holding only three of the twenty-six claims of the original patent valid, constituted an eviction under the license agreement; that the license agreement terminated with the surrender of the original patent in 1936; that petitioners did not make the reissue patents the basis for a new license contract; that while petitioners since the date of the reissue patents paid certain royalties they did so under protest and pursuant to the injunction which was entered in the first *Altvater* case, 66 F. 2d 506; and that the reissue patents were invalid. The District Court accordingly dismissed the bill of complaint and granted the prayer of the counterclaim. The Circuit Court of Appeals affirmed (129 F. 2d 494), holding that the District Court was warranted in concluding that the original license agreement was at an end and that the continuance of royalty payments did not indicate an acceptance of the reissue patents to form a new contract; that the issue of infringement involved only claim 6 of reissue patent No. 20,202, the charges that other claims were infringed having been abandoned; and that the accused devices did not infringe. On a petition for rehearing and motion to modify the opinion and revise the decree, the Circuit Court of Appeals ruled that when the District Court found no contract of license and no infringement, the other issues became moot and there was no longer a justiciable controversy between the parties. 130 F. 2d 763. It accordingly modified the

decree by striking from it the provisions which held that Freeman was evicted from his monopoly by the decision in the *Premier Machine* case and that the reissue patents were invalid, and the further provision which resolved the issues on the counterclaim in favor of petitioners, saying that it expressed no opinion on those questions. The case is here on a petition for writ of certiorari which we granted because of the apparent misinterpretation by the Circuit Court of Appeals of our decision in *Electrical Fittings Corp.* v. *Thomas & Betts Co.*, 307 U. S. 241.

That case was tried only on bill and answer. The District Court adjudged a claim of a patent valid although it dismissed the bill for failure to prove infringement. We held that the finding of validity was immaterial to the disposition of the cause and that the winning party might appeal to obtain a reformation of the decree. To hold a patent valid if it is not infringed is to decide a hypothetical case.[2] But the situation in the present case is quite different. We have here not only bill and answer but a counterclaim. Though the decision of non-infringement disposes of the bill and answer, it does not dispose of the counterclaim which raises the question of validity. *Sola Electric Co.* v. *Jefferson Electric Co.*, 317 U. S. 173, is authority for the proposition that the issue of validity may be raised by a counterclaim in an infringement suit.[3] The requirements of case or controversy are of course no less strict under the Declaratory Judgments Act (48 Stat. 955, 28 U. S. C. § 400) than in case of other suits. *United States* v. *West Virginia*, 295 U. S. 463, 475; *Ashwander* v. *Tennessee Valley Authority*, 297 U. S. 288, 325; *Aetna Life Ins. Co.* v. *Haworth*, 300 U. S. 227; *Maryland Casualty Co.* v. *Pacific Coal Co.*, 312 U. S. 270. But we are of the view that the issues raised by the present counter-

---

[2] See *Cover* v. *Schwartz*, 133 F. 2d 541.

[3] And see *Leach* v. *Ross Heater & Mfg. Co.*, 104 F. 2d 88; Borchard, Declaratory Judgments (2d ed.) pp. 812–814.

claim were justiciable and that the controversy between the parties did not come to an end (*United States* v. *Alaska S. S. Co.,* 253 U. S. 113, 116) on the dismissal of the bill for non-infringement, since their dispute went beyond the single claim and the particular accused devices involved in that suit.

It is said that so long as petitioners are paying royalties they are in no position to raise the issue of invalidity—the theory being that as licensees they are estopped to deny the validity of the patents and that, so long as they continue to pay royalties, there is only an academic, not a real controversy, between the parties. We can put to one side the questions reserved in the *Sola Electric Co.* case—whether, as held in *United States* v. *Harvey Steel Co.,* 196 U. S. 310, a licensee is estopped to challenge the validity of a patent and, if so, whether that rule of estoppel is one of local law or of federal law. In the present case both the District Court and the Circuit Court of Appeals have found that the license agreement was terminated on the surrender of the original patent and was not renewed and extended to cover the reissue patents. The fact that royalties were being paid did not make this a "difference or dispute of a hypothetical or abstract character." *Aetna Life Ins. Co.* v. *Haworth, supra,* p. 240. A controversy was raging, even apart from the continued existence of the license agreement. That controversy was "definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co.* v. *Haworth, supra,* pp. 240–241. That controversy concerned the validity of the reissue patents.[4] Those patents had many claims in addition to the single one involved in the issue of infringement. And petitioners were

---

[4] Shortly after the grant of the reissue patents, petitioners filed a suit for declaration of their invalidity. The Circuit Court of Appeals sustained a dismissal of the bill on the ground that all of the matters placed at issue in that suit could be settled in the present one. *Western Supplies Co.* v. *Freeman,* 109 F. 2d 693.

manufacturing and selling additional articles claimed to fall under the patents. Royalties were being demanded and royalties were being paid. But they were being paid under protest and under the compulsion of an injunction decree. It was to lift the heavy hand of that tribute from the business that the counterclaim was filed. Unless the injunction decree were modified,[5] the only other course was to defy it, and to risk not only actual but treble damages in infringement suits. Rev. Stat. § 4919, 35 U. S. C. § 67. It was the function of the Declaratory Judgments Act to afford relief against such peril and insecurity. S. Rep. No. 1005, 73d Cong., 2d Sess., pp. 2–3. And see Borchard, Declaratory Judgments (2d ed.) pp. 927 *et seq.* And certainly the requirements of case or controversy are met where payment of a claim is demanded as of right and where payment is made, but where the involuntary or coercive nature of the exaction preserves the right to recover the sums paid or to challenge the legality of the claim. See *Maxwell* v. *Griswold,* 10 How. 242, 255–256; *United States* v. *Lawson,* 101 U. S. 164, 169; *Swift & Co.* v. *United States,* 111 U. S. 22, 28–30; *Atchison, T. & S. F. Ry. Co.* v. *O'Connor,* 223 U. S. 280, 286; *Gaar, Scott & Co.* v. *Shannon,* 223 U. S. 468, 471; *Union Pacific R. Co.* v. *Public Service Comm'n,* 248 U. S. 67, 70; Woodward, The Law of Quasi Contracts (1913) § 218.

Our conclusion is that it was error for the Circuit Court of Appeals to have treated the issues raised by the counter-

[5] On April 15, 1943, while this case was pending here, the Circuit Court of Appeals granted petitioners leave to apply to the District Court to vacate the decree in the first Altvater suit, 66 F. 2d 506. The basis of that motion appears to be substantially the same as the counterclaim in the present suit. This underlines and gives added emphasis to the claim that there is a controversy between the parties with respect to the validity of the patents growing out of events subsequent to the first Altvater case. It further serves to demonstrate that the required payment of royalties under that decree does not establish the absence of a controversy.

claim as moot. They were not moot; and the District Court had passed on them. Accordingly, the Circuit Court of Appeals should have reviewed that adjudication.[6] The judgment is reversed and the cause remanded to the Circuit Court of Appeals for that purpose.

*Reversed.*

MR. JUSTICE FRANKFURTER:

We are concerned here with a problem in judicial administration, not a question in algebra as to which there is a demonstrably right or wrong answer. The case before us presents only one phase of an extensive, complicated patent litigation involving numerous technical and interdependent issues. The question which we must now decide is this—in view of the present posture of the controversy, shall one of these issues be adjudicated in the manner indicated by the Circuit Court of Appeals, or shall this Court direct that it be adjudicated upon the defendants' counterclaim for a declaratory judgment? We are all agreed that while a district court may have jurisdiction of a suit or claim under the Federal Declaratory Judgments Act, 28 U. S. C. § 400, it is under no compulsion to exercise such jurisdiction. If another proceeding is pending in which the claim in controversy may be satisfactorily adjudicated, a declaratory judgment is not a mandatory rem-

---

[6] The proposal that the cause should be remanded to the District Court so that it might pass on those issues once more before the Circuit Court of Appeals reviews them does not emanate from the Circuit Court of Appeals. Its refusal to review that adjudication rests on a misinterpretation of *Electrical Fittings Corp.* v. *Thomas & Betts Co., supra,* not on any inadequacy or insufficiency of the findings of the District Court. If the standards of good judicial administration be considered, we fail to see why petitioners should be put to two trials of the same issues before a review by the Circuit Court of Appeals may be had. Nor would it comport with sound judicial administration to uphold a denial of appellate review where the controversy between the parties still rages and where the appeal was dismissed because of a mistaken view of the law.

edy.  Sound judicial administration requires, in my view, that we decline to interfere with the procedure which the court below has provided for the adjudication of the claims for which the defendants sought a declaratory judgment.

This litigation is wrapt in confusion, but from it I extract the following history of its course through the courts.  In the early 1930's a suit for infringement of a shoe machine patent was brought by the patentee, Freeman, against Altvater, a licensee.  This resulted in a ruling in 1933 by the Circuit Court of Appeals for the Eighth Circuit in *Freeman* v. *Altvater,* 66 F. 2d 506, that the patent had been infringed and that the licensee was estopped to assert its invalidity.  Pursuant to this decision a decree was entered requiring Altvater to pay royalties under the license agreement.  Freeman thereafter brought suit against another alleged infringer.  In this proceeding the Circuit Court of Appeals for the First Circuit held, in *Premier Machine Co.* v. *Freeman,* 84 F. 2d 425, that 23 of the 94 claims of Freeman's patent were invalid.  Accordingly, Freeman subsequently filed a disclaimer covering the 23 claims thus held invalid, surrendered his patent, and obtained reissue patents on the remaining claims as well as some other claims not involved in the *Premier* suit.

Shortly thereafter Freeman brought a second suit against Altvater and another company.  In this suit— which resulted in the action of the Circuit Court of Appeals now under review—Freeman alleged that the defendants were violating the terms of the license agreement and prayed for specific performance of the agreement.  The defendants denied this allegation, and, by way of counterclaim, asked for a declaration that (1) the license contract and the original patent "be interpreted in the light of the decision" in the *Premier* case; (2) the license contract "be interpreted by this Court to readjust the relationship between its parties in the light of the facts transpiring since it was entered into"; (3) the license agreement be declared

terminated as of the date of the surrender of the original patent; (4) the reissue patents be declared invalid, "but, if either is valid, then to interpret it or them into its or their proper scope in the light of the facts occurred"; (5) in the event that the reissue patents be found valid, the plaintiffs be directed "to grant to the defendants a license under them of a scope to permit their business to be continued to the extent it could operate under the original contract, and at a royalty commensurate with the protection afforded by the patents"; and (6) the injunction against violation of the license agreement be declared terminated because of the expiration of such agreement.

The district court found that the license agreement ended with the surrender of the original patent in 1936, that the reissue patents had not been made the basis of a new contract between the parties, and that, in any event, the reissue patents included claims "not definitely distinguishable from claims disclaimed" and hence were "inherently invalid for improper disclaimer." Accordingly, the bill was dismissed. The decree recited also that "The issues on the counterclaim are found in favor of defendants and the counterclaim is granted."

Upon appeal to the Circuit Court of Appeals this ruling of the district court was affirmed, 129 F. 2d 494, but upon rehearing the court held that once it was found that the license agreement had terminated and that the reissue patents were not infringed, the remaining issues in the case, *i. e.*, those relating to the validity of the reissue patents, were "moot" in the sense that there was no longer a justiciable controversy for the solution of which a declaration was needed. 130 F. 2d 763. While the appeal was pending before the Circuit Court of Appeals, however, the defendants petitioned the district court to vacate the decree entered under the decision of the Circuit Court of Appeals in *Freeman* v. *Altvater*, 66 F. 2d 506. This motion was based upon two grounds: (1) that the license

agreement ended when Freeman surrendered the original patent after the decision in the *Premier* case, and (2) that there had been no valid reissue of the patent claims. Accordingly, the defendants asked that the injunction be lifted and that they be relieved of their continuing obligation to pay royalties under the license agreement. The plaintiffs objected to the jurisdiction of the district court to entertain such a motion while the appeal was pending in the Circuit Court of Appeals. The district court sustained this objection, and the defendants appealed. On April 15, 1943, after the decision of the Circuit Court of Appeals upon rehearing and while the case was pending here on certiorari, the Circuit Court of Appeals granted the defendants, the petitioners in this Court, leave to proceed in the district court to vacate the 1933 decree. In its opinion the court below expressly stated that "Whether the reissue patents are wholly invalid, as defendants contend, or, if not, whether the claims as reissued are within the protective scope of the existing injunction is a matter which the district court will have to determine." 135 F. 2d 212, 213.

The Circuit Court of Appeals has thus committed to the district court substantially the same questions as those raised by the defendants' counterclaim, *i. e.*, those relating to the validity of the reissue patents. By this action the Circuit Court of Appeals had effectively recalled its previous ruling that these questions were "moot." Whatever might be said, therefore, as to the correctness of its ruling that the validity of the reissue patents presented "non-justiciable" questions, the inescapable fact remains that there is now before the district court for determination a proceeding initiated by the petitioners involving the very questions raised by the counterclaim. By putting the whole case in the charge of the district court, the Circuit Court of Appeals has made it academic for us to consider the correctness of its earlier ruling that there re-

mained no justiciable issues in the controversy between the parties. Review of the grant or denial of a declaratory judgment, like an appeal in equity, calls for disposition of the case on the basis of the circumstances found to exist when the appeal is decided. The Circuit Court of Appeals may have been in error in holding that the questions relating to the validity of the reissue patents could not be passed upon because there was no longer a "justiciable" controversy once non-infringement was found. But its subsequent action, directing the district court to pass upon these questions, is a timely correction, if such was called for, of its earlier ruling.

Therefore, it seems to me that good judicial administration should stay our interference with the Circuit Court of Appeals' exercise of its discretion in adjusting the manner by which the issues as to the validity of the reissue patents should be adjudicated. It is the Circuit Court of Appeals which, by its action of April 15, 1943, has in effect remanded the cause to the district court for determination of these issues. No valid reason appears for disturbing the disposition it has made of the litigation. The lower federal courts ought not to be narrowly confined in determining whether a declaratory judgment is an appropriate remedy under all the circumstances. We need not speculate too far as to the reasons which may have prompted the Circuit Court of Appeals in this case to remand the issues as to the validity of the patents to the district court. It may have been of the opinion, for example, that the findings of the district court lacked sufficient clarity, especially in view of the cloudiness of the pleadings. In any event, however, this seems to me to be the kind of a case in which this Court should be most reluctant to interfere with the procedure determined upon by the Circuit Court of Appeals.

If we are to consider the correctness of the ruling that the issues relating to the validity of the reissue patents are

not "justiciable," I find it too difficult to accept the reasoning of my Brethren. The Court's conclusion that the Circuit Court of Appeals erred in finding "mootness" as to the questions raised by the counterclaim rests substantially upon the notion that a controversy still exists because the defendants are laboring under the "heavy" obligation of paying royalties under the license agreement. But we have held that the controversy must be "definite and concrete," "real and substantial," in order that a declaratory judgment may be given. *Aetna Life Ins. Co.* v. *Haworth,* 300 U. S. 227, 240–41; and see *Maryland Casualty Co.* v. *Pacific Co.,* 312 U. S. 270, 273. The defendants' obligation to pay royalties under the license agreement cannot be very substantial at the present time, since both the district court and the Circuit Court of Appeals have held that the license agreement terminated in 1936 with the surrender of the original patent. In view of these rulings the defendants' need for "relief" is practically infinitesimal, since all that remains to be done is the entry of a formal order vacating the 1933 decree. The "insecurity" and "peril" from which litigants can be saved only by a declaratory judgment are conspicuous by their absence from this case at this time. It may very well be that one who infringes a patent should be entitled to obtain a declaration as to its validity even though he is under no contractual obligation to pay royalties as a licensee. The existence of an invalid patent may substantially impair the economic position of those who market articles which infringe such a patent, even though no infringement suits may be immediately threatened. Potential purchasers may naturally be reluctant to establish business relations upon so insecure a basis. But the Court has not chosen to sustain the propriety of a declaratory judgment here upon this ground, and it is therefore idle to consider its merits.

Mr. Justice Roberts joins in this opinion.