The **PLYMOUTH RUBBER COMPANY, Inc., Plaintiff, Appellant,**

v.

**MINNESOTA MINING AND MANUFACTURING COMPANY, Defendant, Appellee.**

**MINNESOTA MINING AND MANUFACTURING COMPANY, Defendant, Appellant,**

v.

The **PLYMOUTH RUBBER COMPANY, Inc., Plaintiff, Appellee.**
Nos. 6040, 6042.

United States Court of Appeals
First Circuit.

July 15, 1963.

See also 178 F.Supp. 591.

Hector M. Holmes, Boston, Mass., for appellant.

H. L. Kirkpatrick, Boston, Mass., with whom William W. Rymer, Boston, Mass., was on the brief, for Plymouth Rubber Co., Inc.

Edward A. Haight, Chicago, Ill., with whom John M. Harrington, Jr., Boston, Mass., Harold J. Kinney, Stanley G. De La Hunt, St. Paul, Minn., and Ropes & Gray, Boston, Mass., were on the brief, for Minnesota Mining & Manufacturing Co.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

This is another chapter in what the court below aptly called a "litany of litigation" over Reissue Patent No. 23,843 dated June 29, 1954, of original Patent No. 2,559,990 for "Insulating Tape" issued on July 10, 1951, to Oace and others and by them assigned to Minnesota Mining and Manufacturing Company, a Delaware corporation of St. Paul, Minnesota. Once ferreted out the determinative issue on these appeals becomes relatively simple. But to drive the quarry out of its burrow we must analyse the patent and review this and other litigation between the parties over it.

On August 3, 1954, Minnesota brought suit against Sears, Roebuck and Company in the Middle District of North Carolina for infringement of its reissue patent by selling insulating tape manufactured by the plaintiff-appellee herein, The Plymouth Rubber Company, Inc., a Massachusetts corporation with its principal place of business in Canton in that Commonwealth. Plymouth intervened in that suit as a party defendant and conducted the defense of its customer.[1] On the next day, August 4, 1954, Minnesota filed two similar suits, one in the Eastern District of Missouri against another Plymouth customer, which Plymouth actively defended, but in which it did not formally intervene, and another in the Northern District of Illinois against

---

1. On the same day Minnesota brought another like suit in the same court against four other Plymouth customers which was consolidated for trial with the suit against Sears in which Plymouth intervened as a defendant.

Plymouth and six of its customers. Both of these suits were stayed on representations by Minnesota that the North Carolina cases would dispose of the respective controversies without the necessity for trial, and the North Carolina cases in due course went to trial. In that litigation the district court, finding the facts and making the conclusions of law tendered by Minnesota, entered a decree on June 12, 1956, that its patent was valid and infringed, enjoined Sears and Plymouth from further infringement and referred the question of Minnesota's damages to a master.[2] On Plymouth's appeal the United States Court of Appeals for the Fourth Circuit reversed and remanded. Sears, Roebuck & Company v. Minnesota Mining & Manufacturing Company, 243 F.2d 136 (C.A.4, 1957), petition for rehearing and motion to reopen denied, 249 F.2d 66 (C.A.4, 1957), cert. denied, 355 U.S. 932, 78 S.Ct. 413, 2 L.Ed.2d 415 (1958).

The decisions of the court of appeals in the above case define the issue in the one before us. To understand those decisions, however, we must first turn to the patent itself.

The patented product is a stretchable adhesive plastic tape designed primarily for use by electricians for covering splices in electrical conductors. The problem which Oace and his associates set out to solve, and apparently solved, was to plasticize a tape backing of polyvinyl chloride in order to make it stretchable and retractable (elastic) in such a way that it would remain in "permanent equilibrium" with a pressure-sensitive adhesive coating. The patentees say in their specification that they obtained their unique and valuable results "by utilizing an insulating tape in the form of a relatively thick but easily stretchable

and highly elastic pressure-sensitive adhesive tape comprising a well-bonded, water-insoluble, non-corrosive, normally tacky and pressure-sensitive adhesive coating on a plasticized vinyl chloride polymer film which is in permanent equilibrium with the adhesive." They say that by "permanent equilibrium" they mean "that the pressure-sensitive adhesive layer neither softens (becomes 'pasty') nor loses tackiness (becomes nonadherent) on prolonged contact with the backing or film layer." Then the patentees go on to say:

> "In order to secure permanent equilibrium between backing and adhesive, we employ with the vinyl chloride polymer a *combination* of modifiers including a substantial but minor amount (not to exceed about 20 parts per 100 parts of the vinyl polymer) of a *low molecular weight liquid* plasticizer such as dioctyl phthalate [or DOP] together with a substantially equal or somewhat greater amount of a *high molecular weight resinous type* plasticizer, the amount of the latter in any event being sufficient, *together with* the liquid plasticizer, to provide the desired degree of stretch in the final film." (Italics supplied.)

The patentees describe a material known to the trade as "Paraplex G-25" as "a preferred example of a suitable resinous type plasticizer." But they say:

> "While resinous or high molecular weight modifiers such as 'Paraplex G-25' are themselves capable of producing the desired degree of strength, stretch and elasticity in vinyl chloride polymer films, and furthermore are generally classed as 'non-migrating' or 'permanent' type modifiers or plasticizers, it is sur-

---

**2.** At this juncture Minnesota brought two more similar suits in the same court against two other Plymouth customers. These suits were stayed pending appeal in the case against Sears. Upon reversal in that case, the suits were dismissed on Plymouth's motion for summary judgment. (Plymouth was, as the district court notes, "the real party conducting this defense.") Minnesota Mining & Manufacturing Company v. United States Rubber Company and Minnesota Mining & Manufacturing Co. v. Goodyear Tire & Rubber Company, Inc., 178 F.Supp. 385 (M.D.N.C.1959), modified and affirmed 279 F.2d 409 (C.A.4, 1960).

prisingly found that these materials do not provide for permanent equilibrium of adhesive and backing as herein defined. Instead, it has been shown that pressure-sensitive adhesives in prolonged contact with highly stretchable and elastic films consisting solely of vinyl polymer and resinous modifier lose a great deal, if not all, of their initial tackiness or pressure-sensitivity."

Further emphasizing the necessity for the use of the two types of plasticizers, the patentees say that while the adhesive coating on a tape made from a film of the vinyl chloride polymer plus a resinous plasticizer and a liquid plasticizer in the relative proportions of 100:29.5:17.6 proved to be in "permanent equilibrium" with the backing: "On the other hand, adhesives coated on films plasticized with from 40 to 70 parts of 'Paraplex G-25' and in the absence of the dioctyl phthalate [or DOP, the low-molecular-weight liquid plasticizer mentioned above] were soon found to become deficient in tackiness."

The United States Court of Appeals for the Fourth Circuit in the case cited above construed the claims which it said were typical, that is, claim 1 of the original patent and claim 6 for its reissue, in the light of the specification as covering the use of two separate and distinct kinds of plasticizers, one liquid and the other resinous, which the court said: " * * * are two well defined and distinctive types of plasticizers, as the language of the specification indicates, which are not only well recognized by the trade but are characterized by substantial differences in chemical composition." Then, finding that Plymouth was using only Paraplex G-40, which it said was a resinous plasticizer similar to Paraplex G-25 but less expensive, as the plasticizer for its polyvinyl chloride film, the court held that Plymouth had not infringed for the reason that even though it obtained the patentees' result it did so by omitting one element covered by the claims of the patent. Wherefore it reversed and remanded.

On Minnesota's petition for rehearing and motion to reopen on the ground of newly discovered evidence, the court of appeals wrote the second opinion cited above reiterating its previous decision that the patent taught that to manufacture the patented elastic, adhesive, insulating tape it was necessary to use both a resinous type and a liquid type plasticizer. And it rejected Minnesota's motion to reopen for the reception of evidence that the composition of Paraplex G-25 had been changed to include a larger proportion of low-molecular-weight plasticizer saying: " * * * the motion to reopen the case for the taking of additional evidence must be overruled, because even if the new evidence should demonstrate the alleged change in the composition of G-25, the decision of the Court would necessarily be retained. This is so because G-25, although changed to contain a larger quantity of low molecular weights, would nevertheless be a resinous plasticizer and would not be composed partly of a resinous and partly of a liquid plasticizer in accordance with the teaching of the patent."

Upon remand the district court on May 20, 1958, issued a decree on the mandate of the court of appeals reversing and setting aside its previous decree and, with costs to the defendants, dismissed Minnesota's complaint with prejudice "for the reasons stated in the opinions and mandate and for no other reason." Elaborating, the district court said that it interpreted the opinions and mandate of the court of appeals as holding no infringement, which the court said was enough in itself to warrant dismissal of the plaintiff's complaint. Then, while commenting that it did not interpret those opinions as holding the patent invalid, the court said that interpretation "is a matter that can be left to any other court."

In the meantime, in December 1957 (or perhaps in January 1958), Plymouth changed the trade name of its tape from either "Homart" or "Plymouth" to "Slipknot" and embarked on an extensive national advertising campaign wherein it

proclaimed that "After years of research and months of testing" Plymouth had "at last broken the vinyl tape barrier" with its "New Slipknot Plastic Tape," feats which Plymouth attributed to the addition of "ZF-90," which admittedly was purely an advertising "gimmick," but which it at first described as "Plymouth's new polymeric additive for total adhesion." [3]  And at about the same time Plymouth moved for summary judgment in Minnesota's action pending in the Northern District of Illinois mentioned earlier in this opinion.  Minnesota vigorously but unsuccessfully resisted this motion and a like motion in the Missouri litigation.  Minnesota Mining & Manufacturing Company v. Plymouth Rubber Company, Inc., 178 F.Supp. 591 (N.D.Ill., 1959); Minnesota Mining and Manufacturing Company v. Superior Insulating Tape Company, 124 U.S. P.Q. 31 (E.D. Mo.), affirmed 284 F.2d 478 (C.A.8, 1960).

While its petition for summary judgment was pending in Illinois, Plymouth on December 30, 1958, brought the present suit against Minnesota in the United States District Court for the District of Massachusetts for a declaratory judgment and injunctive relief.[4]  Plymouth alleged in its complaint that litigation in the Fourth Circuit had culminated on May 22, 1958, in a final decree that it had not infringed Minnesota's reissue patent, that at the time of the entry of that decree an action by Minnesota for infringement of its patent was pending in the Northern District of Illinois, that although Plymouth had changed the name of its tape to "Slipknot" it had not changed the composition of its tape "in any substantial or material respect" at any time subsequent to the filing of the

Illinois and North Carolina suits, but that nevertheless Minnesota " * * * has now asserted in said Illinois suit, in an effort to keep that suit alive, that Plymouth has made and sold, and that its customers named in the Illinois suit have sold, subsequent to the filing of the Illinois suit, 'Slipknot' plastic electrical tape of alleged modified construction infringing said Oace patent and not adjudicated by said North Carolina decree." Wherefore Plymouth asked for a decree that its "Slipknot" tape did not infringe Minnesota's reissue patent, for an injunction forbidding Minnesota from bringing or further prosecuting any suits against Plymouth or its customers based on the manufacture, use or sale of plastic electrical tape made by Plymouth and for costs and a reasonable counsel fee.

Minnesota answered denying Plymouth's assertion that it had not changed the composition of its tape and counterclaimed for infringement, to which Plymouth replied with a denial and the assertion, *inter alia,* that Minnesota's reissue patent was invalid.  Minnesota moved to strike that portion of Plymouth's reply which alleged invalidity on the ground that Plymouth was bound by a prior judicial determination that the reissue patent was valid, that is, by the adjudication of the district court in the Sears case, and a judge of the court below other than the judge who presided at the trial granted Minnesota's motion. Plymouth, as appellant in No. 6040, challenges the correctness of this ruling in order to protect its right to assert the defense of invalidity in the event that we should reverse the finding of non-infringement made by the court below and thereby render the question of the reissue patent's validity no longer moot.[5]

3.  The court below brushed aside Plymouth's advertising campaign characterizing it as "over-exuberant," "over-promotion" and "rather shabby hucksterism."  We do the same, for it affords no excuse for Minnesota's attempt to relitigate a matter already judicially determined as between it and Plymouth, as will appear hereinafter.

4.  Federal jurisdiction is predicated alternatively upon involvement of the patent laws

of the United States, Title 28 U.S.C. § 1338(a) or upon diversity of citizenship and amount in controversy, Title 28 U.S.C. § 1332(a) (1).

5.  "To hold a patent valid if it is not infringed is to decide a hypothetical case." Altvater v. Freeman, 319 U.S. 359, 363, 63 S.Ct. 1115, 1117, 87 L.Ed. 1450 (1943).

■ The decisions of the Court of Appeals for the Fourth Circuit in the Sears case determine certain issues as between the parties once and for all. Those decisions construe the patent in issue as calling for the use of two well defined and distinctive types of plasticizers, one liquid and the other resinous, which the court said were not only well known and recognized in the art but were characterized by substantial differences in chemical composition.[6] It said:

"The liquid plasticizers are all monomeric, that is, they are simple, precise and well defined chemical compounds of low-molecular-weight ranging from 250 to 600. In them every molecule is like every other molecule so that the material cannot be fractionated. It is thinly fluid. DOP for example has a molecular weight of 390 and a viscosity of less than one poise, which is the unit by which viscosities are measured. Resinous plasticizers on the other hand are polymeric. They are synthetic compositions made by combining chemicals of high-molecular-weight and are extremely viscous. G-25, for example, has a viscosity of 1000 poises. The molecules of these resins are combinations of varying numbers of so-called building units and accordingly vary in weight, ranging in the case of G-25 from 1000 to 50,000. Its average molecular weight is 8000. It is substantially correct to say that no part of G-25 is liquid and no part of DOP is resinous, as these terms are known to the art."

Then, finding on the record before it that Plymouth was using only a resinous type plasticizer in the fabrication of the tapes alleged to infringe, the court reached the conclusion, noted previously, that the defendants therein, Plymouth and Sears, had not infringed since one of the elements of the patented structure had been omitted in the manufacture of the accused product.

Moreover, on rehearing the court also held that even if G-25 had been changed since it first came on the market in 1944 so as to contain a larger quantity of low-molecular-weight material it would nevertheless remain "a resinous plasticizer and would not be composed partly of a resinous and partly of a liquid plasticizer in accordance with the teaching of the patent."

We presume that the basis for the court's rejection of this evidence was its conclusion that even if a resinous plasticizer contained a significant fraction of low-molecular-weight material, such fraction still would not constitute the "liquid" plasticizer of the Oace patent in the "monomeric" sense in which it had defined a "liquid" plasticizer, that is, as "simple, precise and well defined chemical compounds" in which "every molecule is like every other molecule." This presumption is borne out by the Fourth Circuit's repeated rejection of the same type of evidence not only in its opinion denying a rehearing in the Sears case but also in its opinion in the United States Rubber and Goodyear cases cited in footnote 2 above, in which the court said (279 F.2d at 414–15):

"The molecular weights vary in both kinds of plasticizers but each has its own distinctive form, the liquid plasticizer being monomeric and the resinous plasticizer polymeric in its molecular structure, and it follows that Plymouth's tape did not violate the patent even if it be true * * * that Plymouth has found a way to make a satisfactory tape by using a resinous plasticizer containing a substantial amount of low-molecular-weight material."

In short, it has been held in prior litigation between the parties that Minne-

---

6. On rehearing the court disposed of Minnesota's argument that the claims of the reissue patent do not call for the use of a liquid plasticizer by saying: "If these claims are taken to mean that a liquid plasticizer is not used, they are void because not supported by the teachings of the original patent."

sota's reissue patent calls for the use of two types of plasticizers, a low-molecular-weight "monomeric" liquid plasticizer and a high-molecular-weight "polymeric" resinous plasticizer, and that Plymouth did not infringe by using only a resinous type plasticizer even though it might contain a substantial amount of low-molecular-weight material. Basic principles of *res judicata* and estoppel by judgment bar relitigation of these matters. As beween the parties, they are settled once and for all.

This was clearly recognized by the court below which rejected the fractionation tests of Minnesota's expert witnesses by which it undertook to prove that the G-25 and G-40 in the "Slipknot" tape differed from the same compounds in Plymouth's earlier tapes in that those plasticizers had been changed to contain a substantial amount of low-molecular-weight material. It said that it did so partly because it believed Plymouth's witness who testified that the formulae for G-25 and G-40 had not been changed over the years, partly because it believed that the fractionation tests of Minnesota's witnesses did not go far enough to establish the presence of "monomeric" material in the "Slipknot" tape [7] and partly because even if Minnesota's evidence were believed it would constitute the same sort of proof rejected by the court on petition to reopen in the Sears case, wherein the court said that proof of a "larger quantity of low-molecular-weights" in Plymouth's resinous plasticizers still would not make it a "liquid plasticizer" as called for by the Oace patent. Wherefore the court ruled that

"Slipknot does not infringe Oace Reissue Patent, No. 23,843" and entered judgment giving Plymouth the relief it requested. Minnesota's appeal from this judgment is No. 6042.

On its appeal Minnesota contends that the court below erred because it "treated as binding on the issue of infringement an earlier decision between the same parties in the Fourth Circuit, although the article here accused was not and could not there have been involved, and is shown by the evidence herein to be different in the very respect which was pertinently involved in the Fourth Circuit's reversal of its District Court in that earlier case." Minnesota says that this is so because admissions of fact in evidence in this case "showed that there was no low molecular weight (below 1000) plasticizer in the tapes adjudicated non-infringing in the Sears case. On the other hand, undisputed evidence in the record here shows that the tape here accused has a substantial content of liquid, low molecular weight (below 1000) plasticizer in it."

Minnesota's contention rests upon the proposition that there was no low-molecular-weight material in the Plymouth tapes held in the Sears case not to infringe. The fact, however, is, as we have already been at pains to point out, that the court in the Sears case held on Minnesota's motion to reopen, that even though G-25 had been changed since it first came on the market to contain a larger quantity of low-molecular-weights it would nevertheless still be a resinous plasticizer as defined in the patent and not a combination of resinous and liquid

---

**7.** The court said it credited the testimony of Plymouth's independent chemical expert, who said that the distillation test is a simple, reliable and objective test for the presence of liquid plasticizers in the sense of the "monomeric" materials which the court in the Sears case had held to be an indispensable element under the teaching of the Oace patent, and who further testified that such tests conducted by him indicated the absence of any appreciable amount of such material in Plymouth's tapes.

We have laboriously waded through Minnesota's evidence in the record, which for us as non-chemist laymen proved an odyssey fraught with obscurity, confusion and frustration. The most we can make of it is that it shows the presence of low-molecular-weight material in the plasticizer used in Plymouth's "Slipknot" tape. Indeed, this is all that Minnesota claims for its evidence in the court below or claims for it on this appeal.

plasticizers within the patent's teaching. That is to say, the court held that the presence of low-molecular-weight material in G-25 and similar compounds would not render them any the less resinous plasticizers as defined in the patent.

Minnesota, in trying to show the presence of low-molecular-weight material in Plymouth's "Slipknot" tape, is simply trying to relitigate a matter already judicially determined in prior litigation with Plymouth. Its argument, therefore, overlooks, or seeks to evade, the holding of the Court of Appeals for the Fourth Circuit in the Sears case. The true issue here, as the court below recognized, is not whether Plymouth is using a resinous plasticizer with low-molecular-weight material in it. In prior litigation between the parties it has been judicially determined that it can. The issue here is whether the plasticizer Plymouth is now using is a pre-blend or synthesis of liquid and resinous plasticizers as the Court of Appeals for the Fourth Circuit defined those materials.[3]

We cannot escape the impression that Minnesota has made no attempt to prove the issue in this case but instead is trying either to further litigate the validity of the Fourth Circuit's definition of liquid and resinous plasticizers as those terms are used in the patent or else to ignore that definition on the spurious ground that the meaning of the terms used in the patent was either not directly in issue or else was not the real basis for decision in the Sears case. If there is one thing, however, that the Sears case ought to have taught Minnesota it is that the term "liquid plasticizer" as used in the patent was directly in issue and was held not to mean a resinous type plasticizer even though such a plasticizer might have low-molecular-weight ma-

terial in it. There is no excuse for further litigating those issues with Plymouth.

■ There is no doubt in our minds that Plymouth has made out a case for an injunction in the discretion of the court below. We think it clear that Plymouth is entitled to protect its business from the adverse effects to be anticipated from the harassing of its customers with claims for damages arising out of the use of its products. "No one wishes to buy anything, if with it he must buy a law suit." Kessler v. Eldred, 206 U.S. 285, 289, 27 S.Ct. 611, 613, 51 L.Ed. 1065 (1907). But we think the injunction too broadly drawn in that it enjoins Minnesota from representing that Plymouth's "Slipknot plastic electrical tape" is an infringement of the Oace patent and from bringing any action at law or in equity based upon the manufacture, use or sale of "said Slipknot tape." Identification merely by trade name leaves Minnesota handcuffed in the event Plymouth should apply "Slipknot" to an infringing tape. The injunction should be limited to Plymouth tapes made in substantially the same way from substantially the same materials as those adjudicated non-infringing both by the Court of Appeals for the Fourth Circuit in the Sears case and by this court in the case at bar.

■ From what we have said in this opinion it must be clear that we find no abuse of discretion in awarding Plymouth a counsel fee.

Judgment will be entered dismissing Plymouth's appeal, No. 6040.

In Minnesota's appeal, No. 6042, judgment will be entered affirming the judgment of the District Court as modified in accordance with this opinion.

---

3. The court in its first opinion in the Sears case said that the defendants herein concede that the use of a pre-blended mixture of the two types of plasticizers would be the equivalent of mixing them during the process of production.