**Domer SCARAMUCCI, Appellant,**

v.

**UNIVERSAL MANUFACTURING CO.,
Inc., Appellee.**

**No. 21843.**

United States Court of Appeals
Fifth Circuit.
April 20, 1966.

See also D.C., 234 F.Supp. 290.

Jerry J. Dunlap, Oklahoma City, Okl., Arthur R. Carmody, Jr., Wilkinson, Lewis, Woods & Carmody, Shreveport, La., Dunlap & Laney, Oklahoma City, Okl., for appellant.

Isaac Abramson, Shreveport, La., J. Matthews Neale, Strauch, Nolan & Neale, Washington, D. C., Wilson, Abramson, Maroun & Kaplan, Shreveport, La., for appellee.

Before WOODBURY,* WISDOM and BELL, Circuit Judges.

* Senior Judge of the First Circuit, sitting by designation.

WOODBURY, Senior Circuit Judge (by designation).

This is an appeal from a judgment for the defendant in a suit brought for the infringement of claims 1, 4 and 5 of United States patent No. 2,763,455 issued to the plaintiff on September 18, 1956, for "Frame Construction for Playgyms." The claims in suit cover a coupling for attaching the upper ends of the A-shaped legs of the device to the ends of the horizontal bar to which the swings are attached. The usual issues of validity and infringement are presented.

The patented coupling is a piece of sheet metal of appropriate thickness stamped out roughly in the shape of a woman's apron without strings and with a semicircle cut out of the part that would correspond to the front of the waist. In a typical embodiment an end of the horizontal bar is placed in the semicircle and welded to it and the sides of the stamping adjacent to the semicircle are bent outwardly and upwardly over the end of the horizontal bar and also welded to it. The side portions of the apron-shaped stamping are then bent outwardly in such a way as to overlap and to form two downwardly divergent sockets for the reception of the upper ends of the A-shaped legs. A bolt run through the overlapping outer webs and the continuous inner web serves when tightened to constrict the sockets to grip the upper ends of the legs and hold them firmly in place.

The court below held the claims in suit invalid and even if valid not infringed. The plaintiff appealed from so much of that court's judgment as held the claims invalid and claim 1 not infringed.[1]

Although abandoning the issue of infringement of claims 4 and 5, the appellant nevertheless asks us to reverse the court below and hold all three

[1] In his notice of appeal the plaintiff asserts that he appeals from that part of the final judgment of the court below which held:

"1. That claims 1, 4 and 5 of Scaramucci Letters Patent 2,763,455 are each void and invalid in law.

"2. That Defendant's coupling charged to infringe and depicted generally by Horowitz Letters Patent 2,904,359 does not infringe Claim 1 of said Scaramucci Letters Patent 2,763,455."

claims in suit valid. We refuse for, as the Supreme Court, relying on Cover v. Schwartz, 133 F.2d 541 (C.A.2, 1943), pointed out in Altvater v. Freeman, 319 U.S. 359, 363, 63 S.Ct. 1115, 87 L.Ed. 1450 (1943), "To hold a patent valid if it is not infringed is to decide a hypothetical case." We disagree with Hayes Spray Gun Co. v. E. C. Brown Co., 291 F.2d 319, 326 (C.A.9, 1961), upon which the appellant relies insofar as it might be read to indicate a contrary view.[2] We therefore limit our consideration to claim 1 and in our view need only to consider its validity.

The court below held that the patented coupling was a mere aggregation of the prior art within the competence of any qualified mechanic or engineer and hence was not entitled to the protection of a patent. We agree.

The plaintiff's device did not revolutionize the playgym art. On the contrary, the evidence is clear that the device enjoyed but a brief and feeble life. At the most it may have made for lighter playgyms cheaper to manufacture and ship, but it cannot be said that the device filled a long-felt void in the art or attained any substantial commercial success. We therefore start our consideration of the issue of validity without any collateral aid from commercial success based on inherent worth or filling a long-sought need.

■ An extended consideration of the prior art is superfluous. We only need to refer to a French patent granted to M. Alphonse Vincent on February 23, 1948, for fittings for connecting tubes,

bars or the like. This patent teaches the joining of tubes or pipes at any angle of convergence, not by a threaded coupling but by a coupling split along the interior side of the angle joining adjacent tubes or bars into which the ends of the tubes or pipes to be connected will slide, and which then can be simultaneously tightened to clamp the tubes to be joined by a bolt run through parallel gussets or wings provided on the edges of the split in the coupling. It is true as the appellant points out that the Vincent patent does not specifically name sheet metal as a material for the couplings. But the patent provides that the couplings may be "made of any suitable material," and certainly sheet metal is a well known material with suitable flexibility for the purpose. And welding couplings for the legs onto the cross bar was old in the playgym art. See patent 2,560,713 issued to S. Bender on July 17, 1951. Making due allowance for hindsight and the statutory presumption of validity (Title 35 U.S.C. § 282), it seems to us that a mechanic or engineer with playgyms in mind and the Vincent patent before him would readily adapt the Vincent teaching to the problem at hand.

■ We do not consider this an exceptional case calling for costs in this court and an award of attorney fees under Title 35 U.S.C. § 285 as the appellee contends.

Judgment will be entered affirming the judgment of the District Court as to the invalidity of claim 1 and dismissing the appeal insofar as claims 4 and 5 are concerned.

2. In that case the trial court held one of several patents invalid and not infringed, and the appellant did not challenge the conclusion of non-infringement on appeal. Thus, as the court of appeals pointed out, the holding of non-infringement must stand. But the court said this did not make moot the issue of the patent's validity, as to which it had ordered a new trial, because, absent reversal, the trial court's conclusion of invalidity would be *res judicata* in subsequent litigation between the parties and this gave the appellant sufficient interest to press its contention for reversal of the trial court's holding of invalidity.