The **INTERNATIONAL PAPER BOX MACHINE COMPANY, Philip D. Labombarde and Raymond A. Labombarde, Plaintiffs,**

v.

**SPECIALTY AUTOMATIC MACHINE CORPORATION and Machinery Rebuilders, Inc. (doing business as Maverick Box Machinery Company), Defendants.**

Civ. A. No. 66–55–W.

United States District Court

D. Massachusetts.

Dec. 6, 1968.

Thomas Cooch, Cambridge, Mass., for plaintiffs.

Cedric W. Porter, Robert E. Meyer, Porter & Meyer, Boston, Mass., for defendants.

OPINION

WOODBURY, Senior Circuit Judge.*

The plaintiff, The International Paper Box Machine Company, is the owner by assignment of two patents issued to the other two plaintiffs who are brothers, high officers and majority stockholders of International. The patents involved cover machines and methods for putting a glossy wax coating on flat cardboard blanks for making paper boxes primarily for use in packaging frozen foods. The wax coating on such boxes serves a dual purpose. One purpose is to give the boxes an attractive appearance, the other is to make the boxes waterproof.

Broadly and generally speaking the machines involved consist of a series of constituent parts, sections or divisions referred to at the trial as zones through which the box blanks pass horizontally in rapid succession one after another. The uncoated paper box blanks are fed into the machines at one end and are carried through the nips of rolls and on belts first through a zone where at least one and typically both surfaces of the blank are roll coated with some form of hot melted viscous wax, then optionally through a zone where the upper surface of the waxed blank is polished by, typically, a reverse rotating burnishing roll, then through a leveling or reheating zone where the upper surface only of the wax on the top side of the box blank is melted and liquified to form a mirror-like level pool with a high gloss surface, then through a quenching zone where the blanks pass under a low, cold waterfall and then through wringer rolls which remove excess water from the blanks and deliver them stacked on a table.

In issue in this litigation are claims 3, 13 and 14 of Reissue Patent 25,792 issued to Philip D. Labombarde on June 8, 1965, on an application for reissue of Patent 3,070,457 which issued to him on Decem-

ber 25, 1962, on an application filed December 28, 1959, and claims 33, 34 and 36 of Patent 3,202,532 issued to Raymond A. Labombarde on August 24, 1965, on an application dated November 14, 1960. In essence the claims of the Philip D. Labombarde reissue patent here in suit cover reheating no more than the top layer of a thin coating of hot melt wax composition on the upper surface of the box blank which will form the outside of the box just enough to liquify it so that, without penetrating the fibrous box board, it flows into a smooth surfaced pool, and then passing the blank under a low gentle cold waterfall which immediately quenches the wax but so gently as not to mark or mar the surface. In essence the claims of the Raymond A. Labombarde patent here in suit cover a machine and the method for advancing box blanks waxed on both surfaces through the nip of a roll revolving in the opposite direction of the travel of the blanks through the machine by means of a smooth chilled advancing roll which because of its low temperature chills and grips the waxed bottom surface of the blank and forces it through against the force of the reverse rotating roll on top which may be used for waxing, for glossing or burnishing, or for remelting and redepositing a wax coating already applied, or for any other purpose. I shall consider the patents in detail in the order of their issuance.

Claim 3 of the reissue patent was carried over verbatim from the original patent. It reads:

"In a wax coater the combination of means for advancing a plurality of paper box blanks individually and successively along a horizontal path; roll coating means along said path for applying a thin coating of hot melt wax coating composition, in a thin layer of uniform thickness on the upper, horizontal, face of each advancing blank; heated means further along, and above the horizontal path of said blanks for remelting and liquefying the thin layer

* By designation.

of coating on each blank into a mirror-like, level pool with a high gloss surface; quenching means further along and above said horizontal path, said quenching means comprising a shower having a continuous, narrow emission aperture extending transversely entirely across the path of said blanks at a spaced distance above said path for directing an unbroken sheet of quenching liquid in the form of a low waterfall on each said blank advancing thereunder to harden the remelted, liquefied layer thereon without marking the same and means on said coater for supplying coolant liquid to said quenching means."

Claims 13 and 14 were added by the reissue. They differ from claim 3 only in that they do not claim quenching means comprising a shower having a continuous "narrow emission aperture" extending across the path of the blanks but cover more broadly, in claim 13 a "shower extending transversely" entirely across the path of the blanks and in claim 14 a shower having a "continuous member" extending transversely entirely across the path of the blanks. The plaintiffs concede that claims 13 and 14 stand or fall together.

The cold water for the waterfall is provided by a tank mounted in the machines above the line of travel of the box blanks. This tank is described in the specification of the reissue patent in the same words as the specification of the original patent as having an inclined bottom terminating in a shelf and a front wall in the form of a vertically adjustable sluice gate. That is to say, claim 3 in the light of the specification shows a water tank with a narrow adjustable opening, or sluice, at the bottom of one wall through which water from the tank flows onto a shelf and over the edge of the shelf a short distance, the specification says about ½ inch, in an unbroken sheet onto the box blanks passing below.

At about the same time that the Labombarde brothers were experimenting to develop their machine Kramer and Bayard Barnes, father and son, and one J. Aubrey Sweet, owners and officers of Oakland Paper Box Company of Emeryville, California, the Oakland Group hereinafter, were working on the development of a paper box blank wax coating machine. In January 1961 the Oakland Group learned that another paper box company had at or about that time developed and was using a reheating-waterfall quenching structure in a paper box blank waxing machine and from that time until October 1961 the Oakland Group manufactured and sold 14 machines utilizing such reheating and quenching structure. The water tanks on these machines were of the sluice type such as the tank described as covered by claim 3 of the reissue patent.

In October 1961 the defendant Specialty Automatic Machine Company entered into an agreement with the Oakland Group to purchase rights to manufacture the paper box blank wax coating machine the latter had developed, and soon thereafter Specialty entered into an exclusive agreement with the defendant Machinery Rebuilders, Inc., doing business as Maverick Box Machinery Company under which the latter agreed to sell such machines known as Oakland Higloss Pattern Coaters. From then on Specialty manufactured and Maverick sold paper box blank wax coating machines which included reheating means and a quenching means comprising a box-like tank structure rectangular in cross-section having a sluice-type opening at the bottom of one side for providing a low waterfall of cold quenching liquid.

Original Patent No. 3,070,457 was issued to Philip D. Labombarde on December 25, 1962, and in January 1963 the plaintiffs notified the defendants that they were infringing that patent. Thereupon Specialty ceased using the sluice type water tank and converted to a tank circular in cross section one quadrant of which was open at the top to allow water to spill out over a shelf attached to the edge and thence a short distance down in a waterfall onto the blanks passing in

succession below. Specialty also converted all machines previously sold either by it or by the Oakland Group to the later weir type tank but at no cost to itself— the Oakland Group paying that cost in accordance with the agreement entered into with Specialty.

Philip D. Labombarde applied for reissue of his patent 3,070,457 on May 15, 1963, and by November of that year the quenching structures on all machines which both Specialty and Oakland had sold were converted to substantially circular cross-sectioned, weir type structures approximately one quadrant of which was open at the top to allow a waterfall to spill out over the rim and over a shelf onto the box blanks passing below. For reasons of economy and practicality International had already begun to use the weir type tank on its machines.

I find that claim 3 as it appeared in original patent 3,070,457 and reappeared in identical language in reissue patent 25,792, construed in the light of the specification, which is the same in both patents, is limited by the phrase "narrow emission aperture" to cover only the sluice type cold water tank. A sluice gate extending all the way across the bottom of one side of the water box or tank is certainly a "narrow emission aperture." To construe that phrase to cover an open quadrant of the top of a cylindrical water tank would do violence to plain language. Claims 13 and 14 added by the reissue are broad enough to cover the weir type tank open at the top, but application for those claims was not made until Specialty was in the process of converting to that type of tank as International had done already. I am unable to escape the conclusion that reissue claims 13 and 14 were sought in order to meet and cover the weir type tank resorted to by Specialty to avoid the charge of infringing original and later reissue claim 3. In short, I find that the weir type water tanks in use on all Specialty and Oakland coaters after November 1963 do not infringe claim 3 of the Philip D. Labombarde reissue patent. At least some tanks in use prior to that time on Specialty and Oakland machines did infringe but such infringements have long since come to an end and on the evidence that the weir type tank is not only more economical to build but also superior in practical operation there can be little doubt that infringement will not be resumed.

Although "[T]o hold a patent valid if it is not infringed is to decide a hypothetical case," Altvater v. Freeman, 319 U.S. 359, 363, 63 S.Ct. 1115, 1117, 87 L. Ed. 1450 (1943), it seems to me expedient, in the event my conclusion of noninfringement is erroneous, to very briefly indicate my view that claim 3 of the reissue patent to Philip D. Labombarde is valid. It seems to me that reheating only the top layer of wax on a cardboard box blank and then quenching it under a gentle low cold waterfall accomplished a new and useful result, that is to say, a paper box of superior gloss with superior impermeability to water, required an exercise of the inventive faculty above the ordinary skill of the art, and that the concept of reheating only the top layer of wax on the top surface of the paper box blank and then quenching under a low gentle cold waterfall was not known, shown or foreshadowed by the prior art. It is true that the Oakland Group made the same invention at about the same time but that is of no moment for no one in that Group obtained a patent. Counsel are agreed, and I find, that this is a case of simultaneous independent invention. I therefore conclude that reissue claim 3 is valid and was infringed up to November 1963 but not thereafter.

Claims 13 and 14 for the reasons already given impress me as also valid and I construe them as broad enough to cover the weir type water boxes. But long before these claims were allowed the defendant Specialty in response to notice of infringement of original claim 3 had changed its water tank to the weir type and had converted all machines previously made either by it or by the Oakland Group to that type of water tank. This

situation invokes the first sentence of the second paragraph of Title 35 U.S.C. § 252 which provides:

"No reissued patent shall abridge or affect the right of any person or his successors in business who made, purchased or used prior to the grant of a reissue anything patented by the reissued patent, to continue the use of, or to sell to others to be used or sold, the specific thing so made, purchased or used, unless the making, using or selling of such thing infringes a valid claim of the reissue patent which was in the original patent."

I therefore conclude that Specialty may continue to make use of and sell its wax coating machines with weir type cold water tanks in spite of reissue claims 13 and 14 and shall so provide in my decree.

The Raymond A. Labombarde Patent No. 3,202,532 covers both a glossy coating machine and a method. It describes and claims a wax coating machine in which a paper board carton blank which has been coated on both sides with some appropriate wax coating is passed to a burnishing or roll-glossing means comprising at least one pair of oppositely disposed rolls forming a nip through which the blank passes. The upper roll of the pair is reverse rotating for blank glossing while the lower roll is forward rotating and chilled to grip the blank and cause it to pass through the nip in a forward direction against the reverse rotating action of the upper roll. Briefly, claim 33 covers an apparatus including such roll-glossing means, with appropriate reverse and forward drive means, together with means for maintaining the temperature of the upper, reverse rotating roll at least at the melting point of the wax coating composition while maintaining the temperature of the lower forward rotating advancing roll well below the melting point of the composition. Claim 34 covers the machine specified in claim 33 "wherein said roll-glossing means includes a scraper blade for removing accumulations from at least one of the rolls of said means." Claim 36 is

a method claim which describes a process for producing a smooth coating on a paper box blank which has been wax coated on both surfaces which include a key step "advancing said blanks individually and successively further along said path by chilled forward roll contact with the said coated one face thereof while reverse roll glossing the coating on the said other coated face thereof."

The plaintiffs concede that reverse rotating rolls for various purposes are old in the art. The Raymond A. Labombarde invention is asserted to lie in the smooth chilled advancing roll which hardens and grips the wax coating on the underside of the blank and forces the blank along against the counter force of the reverse rotating roll on top. This is said to be a great improvement over the knurled advancing rolls of the prior art in that knurled rolls tended to mark and mar the box blanks and also tended to accumulate a coating of wax which could not be wholly removed by a scraper blade and so became ineffective.

The claims do not specify the material of which the advancing rolls are made. Claim 33 requires only that the blank advancing roll be "smooth" as well as chilled. In the specification, however, it is said that the lower roll "is called a blank advancing roll since it is of steel and provided with a hard, smooth cylindrical face" and again that the pair of rolls includes a lower roll "of metal such as steel, * * * having a hard smooth cylindrical face." Moreover a prior art patent for a method of coating paperboard carton blanks issued to Pierce et al. (No. 3,011,913) on December 5, 1961, discloses a reverse rotating roll and, in conjunction with accelerated initial velocity, an advancing roll having "a higher coefficient of friction," described in the specification as rubber surfaced, to frictionably grip and advance paper box blanks against the counter force of the reverse rotating roll. From the foregoing I am constrained to construe the Raymond A. Labombarde claims in issue as covering chilled advancing rolls of steel or at least some other metal.

The defendants' machines as first manufactured did not have any reverse rotating rolls and hence did not require any roll or other device for advancing paper box blanks against the counter force of such rolls. In May 1964 however Specialty produced a machine having a so-called leveling section employing reverse rotating rolls wherein it used silicone rubber covered advancing rolls to frictionally grip the paper box blanks and force them along against the counter force of the reverse rotating leveling or burnishing rolls. These rubber coated advancing rolls are chillable but the undisputed testimony is that the rolls were not chilled in order to "harden and grip" the wax on the box of the box blank as in the Raymond A. Labombarde patent but could optionally be chilled to protect the bond of the silicone rubber to the metal roll, and also so prevent deterioration of the rubber, caused by heat picked up from the heated roll above.

Construing the claims of the Raymond A. Labombarde patent as I do I find them not infringed by the silicone rubber coated advancing rolls of the Specialty machines. I do find those claims valid, however, as both new and useful and as a substantial step forward in the art, not merely a mechanic's advance. I find, however, that claim 34 adds nothing patentable to claim 33. A scraper blade to remove accumulations picked up by a roll is old in several arts involving rolls, such as road rollers, and at the most is no more than a mechanic's expedient.

 In summary then I find claims 3, 13 and 14 of the Philip D. Labombarde reissue patent valid. I find that claim 3 was infringed until November 1963 when all machines manufactured by either Specialty or the Oakland Group had been converted to the weir type tank, and that there is no prospect that infringement will be resumed. I find that Specialty is entitled to continue to make use of and sell the weir type tank since that type of tank was not covered by claim 3 of the original Philip D. Labombarde patent but, although covered by claims 13 and 14 of the reissue patent, was developed, made and used prior to the grant of the patent.

 I find claims 33, 34 and 36 of the Raymond A. Labombarde patent valid but not infringed by the rubber covered advancing rolls of the Specialty machines.

I find that the defendants are not entitled to counsel fees.

A decree will be entered accordingly.