**BACON AMERICAN CORPORATION, a corporation, Plaintiff,**

v.

**SUPER MOLD CORPORATION OF CALIFORNIA, a corporation, Defendant.**

Civ. No. 8009.

United States District Court
N. D. California, N. D.

March 27, 1964.

---

Johnson, Davies & Greve, Edmund Davies, Sacramento, Cal., Owen & Owen, Carl F. Schaffer, Allen Owen, Toledo, Ohio, for plaintiff.

Naylor & Neal, Jas. M. Naylor, Frank A. Neal, San Francisco, Cal., Webster & Webster, Roger B. Webster, Stockton, Cal., for defendant.

MacBRIDE, District Judge.

This is a civil action for infringement of claims 1, 3 and 7 of United States Letters patent number 2,903,742 for Apparatus Retreading Tires granted on September 15, 1959, to plaintiff, Bacon American Corporation, as assignee of Carlton K. Barefoot. Plaintiff seeks an injunction against further infringement by the defendant, Super Mold Corporation of California, and an accounting for profits and damages with respect to past infringement.

Defendant, in its amended answer and counterclaim alleges that the Barefoot patent is invalid and denies that it has infringed the patent. By its counterclaim defendant seeks an adjudication of invalidity of the patent and an injunction restraining the commencement of prosecution of actions for infringement against defendant's customers.

Bacon American Corporation is an Indiana Corporation with its principal place of business in Muncie, Indiana, and a regular and established place of business at Oakland, California. Super Mold Corporation of California is a California Corporation with its principal place of business at Lodi, California.

This Court has heretofore made findings of fact and entered its order enjoining the plaintiff from commencement of additional suits against defendant's customers.

The Court has jurisdiction of the parties and the causes of action embodied in the pleadings.

The patent in suit relates to an apparatus for retreading of worn automobile tires. In process of retreading a tire, any remaining portion of the old tread rubber is buffed off, the surface roughened, and a strip of new tread rubber, tapered at the edges, is cemented on the tread area of the tire. The "prepared tire body" is then placed in a tire retreading mold or matrix and heat and pressure are applied to vulcanize the new tread stock.

The process with which we are concerned in this action involves the loading of the "prepared tire body" into the lower half of a retreading mold, the closing of the upper half of the mold down upon the tire body, the clamping of the molds together and thereafter the removal of the joined molds enclosing the tire to a place where heat can be applied and the tire vulcanized while the mold loading apparatus is being used to either load or unload another set of molds. The apparatus for loading and unloading the molds will be hereinafter referred to as a press.

The Barefoot apparatus consists of a press having upper and lower platens, each of which has provision for releasably receiving one-half of a circumferentially separable or split mold body. In the patent disclosure the mold halves are fixed to the platen by a locking wire. The mold itself has the usual matrix section on the interior to impart the desired tread design to the tire, but on its exterior it is fitted not only with a means to lock each half to the respective press platens, but with an additional means by which the two halves could be locked together to become a self sustaining unit. In the patent, this means is shown as a circumferential clamp ring which engages special flanges on each mold half with sufficient precision and strength to hold the two halves against the high pressures that develop during vulcanization.

Each mold half is self heating. That is, it does not depend on any source of heat at the press to develop the necessary curing temperatures. Instead the mold halves are each provided with fittings which, after the mold halves have been locked together in the press and thereafter transferred to the curing station, they may be connected to steam or electric lines remote from the press to effect hearing of the unit for the required period of time.

Claims 1 and 7 of the Barefoot patent, for the purposes of this action, are identical. Claim 3 is merely a supporting claim and need not be discussed. Claim 1 of the Barefoot patent reads as follows:

"In an apparatus for retreading tires, the combination of a closeable press having a bed and an upper platen and a lower platen one of said platens being relatively moveable to the other as said press is opened and closed, circumferentially separable tire mold sections, means to releasably connect each of said mold sections to a respective one of said platens for movement therewith, means to connect the tire mold sections together to form a self sustaining mold body, means to remove a connected pair of mold sections from said press as a unit to support said pair apart from the press, and to return said pair to operative position with respect to said press platens, and each of said mold sections having provision for connection to means exterior of said press to cause heating of said connected mold sections to vulcanize a prepared tire carcass therein."

Although claims 1, 3 and 7 are the only claims in suit I believe it necessary to also recite claims 2, 5 and 6 of the said patent for the reason that these claims

will come into discussion later in this opinion. Claim 2 reads as follows:

"2. In an apparatus for retreading tires, the combination of a pneumatically closeable press having relatively moveable upper and lower platens and a bed, *means to mount said lower platen for vertical swinging movements relative to said bed,* circumferentially separable tire mold halves, means to releasably connect one of said tire mold halves to said upper press platen, means operable in all positions of said lower platen to releasably connect the other of said tire molds to said lower swingable lower platen, means to clamp said tire mold halves together to form a self sustaining mold body, *means to swing said lower platen and a connected mold to a position outside said press,* and each of said mold halves having a provision for connection to means exterior of said press to cause heating of said mold halves when clamped together to vulcanize a prepared tire carcass therein." (Emphasis added).

"5. In an apparatus for retreading tires, the combination of a closeable press having relatively moveable upper and lower platens and a bed, *means to mount said lower platen for movement to a position away from said press bed,* circumferentially separable tire mold halves each containing a heating means, means to releasably connect one of said tire mold halves to said upper press platen, means operable in all positions of said lower platen to releasably connect the other of said tire mold halves to said moveable lower platen, means to clamp said tire mold halves together to form a self sustaining mold body having its own heating means, *means to move said lower platen and connected mold to a position outside said press,* and each of said mold halves having provision for connection to means exterior of said press to cause heating of said mold halves when clamped together

to vulcanize a prepared tire carcass therein." (Emphasis added).

"6. In an apparatus for retreading tires, the combination of a closeable press having a bed and an upper platen and a lower platen said platens being relatively moveable to each other as said press is opened and closed, *means carried by said press to move said lower platen from a position outside of said bed to a position over said bed and beneath said upper platen,* circumferentially separable tire mold halves, means to releasably connect each of said mold halves to a respective one of said platens, means to connect the tire mold halves together to form a self sustaining mold body and *means to return the lower platen and the connected mold halves attached thereto to a position outside of the press."* (Emphasis added).

Defendant's Lodi press and its associated parts is an apparatus which functions much like that of the Barefoot patent. In each apparatus a press is provided which has a bed, and upper and lower platens which are pneumatically moved toward and away from each other; in each apparatus the platens are provided with locking means to hold a respective mold half so that, as the platens move apart, a circumferentially separable mold can be opened, and as the platens move together such a mold can be closed and put under pressure; in each apparatus the mold halves not only have provision for being locked to the press platens, but also have special provisions in the form of flanges by which they can be held together by a clamping ring; in each apparatus the mold halves, then, form a self sustaining unit when locked together which can be removed from the press and supported apart from the press during the vulcanizing period. In each combination the mold halves have provision for attachment to a power source for heating at some remote station.

In what Barefoot has named in his description as the "preferred embodi-

ment" of the invention (Exhibit 30) he not only describes but also shows by numerous diagrams a swingable lower platen which transports a set of locked molds outside the press to a vertical position and to be held in position by the lower platen while the joined molds are received on a dolly or some other device for transporting the joined molds to the curing station. Likewise, the swinging lower platen can pick up a set of locked molds which has returned from the curing station and by activation of a rocker arm cause the lower platen and joined molds to swing up and into the press from a vertical position outside the press to a horizontal position inside the press bed. The swinging platen is powered by the apparatus to which it is attached.

Defendant uses a dolly to bring a pair of empty but joined molds to the press. The molds are held together by a band circumferentially surrounding them which has two short arms extending out on either side so that the joined molds can be picked up by complementary arms located on a dolly thus enabling the joined molds to be transported by a dolly. At the moment when the dolly bearing the joined molds is brought to the press the horizontal platens of the press are separated and the press is open. The dolly carrying the mold is then manually introduced into the apparatus so that the molds are over the lower platen of the press. Power is then applied to the lower platen of the press causing it to raise and pick up the joined molds off the dolly. Operations are then performed for locking the mold halves to the respective upper and lower platens of the press separating the upper and lower molds, inserting the prepared tire by shoving it into the press on a horizontal plane, closing the molds down upon the tire and then clamping the molds together with a ring which bears the support arms. The lower platen is then lowered until the extending arms on the clamp ring surrounding the joined molds engage the support arms on the dolly whereupon the molds are free of the press. The loaded dolly is then manually backed out

of the press apparatus, the molds are manually turned to a vertical position, and the loaded dolly is taken to a curing station where fixtures on the mold halves are attached to a heat source and the tire is vulcanized while the molds in which it is encased rest on the dolly.

The ultimate questions before the Court are (1) the validity of plaintiff's patent claims and (2) whether the language in claims 1 and 7 of the patent reading as follows:

"Means to remove a connected pair of mold sections from said press as a unit and support said pair apart from the press, and to return said pair to operative position with respect to said platens, * * *"

is sufficiently broad to cover the dolly device used by defendant to bring the joined molds to the press, deposit them in the press and take them away from the press and to thus make defendant's device an infringement.

I will deal first with the question of infringement and will promptly answer the question by stating that I am unable to find infringement of any of the litigated claims.

The rules of patent claims construction are well stated in Del Francia v. Stanthony Corporation, 278 F.2d 745, at page 747 (C.A.9) where Circuit Judge Jertberg stated the following:

"The general rules of patent claims construction are well settled. A patent is to be construed as a contract, with the intent of the parties uppermost so as to give effect to their legitimate expectations. Further, since letters patent are contracts, questions of construction are questions of law for the court. (Citations omitted). The claims are a measure of the monopoly granted to the inventor, (Citations omitted) and they can never be broader than the invention disclosed to the public. Finally, the specifications and drawings must be looked to in order to properly grasp the invention or explain any ambiguity in the claims.

The specification may not be used to enlarge any claim, but can be used to limit any claim. While the claims must be read in the light of the disclosure of the specifications, this does not restrict the invention to the precise structure disclosed, but rather to the real invention as found in the specifications and drawings." (Citations omitted).

Plaintiff argues that while the dolly device employed by the defendant is not identical to either the critical element of the "means" described in claims 1 and 7 or the preferred embodiment of that element of the "means" as set forth in the description and diagrams of the patent, nevertheless, it is an equivalent which will not be allowed by law. In his brief he quotes at length from Graver Tank and Manufacturing Company v. Linde Air Products Company, 339 U.S. 605, at page 607, 70 S.Ct. 854, at page 856, 94 L.Ed. 1097, where the Supreme Court said in part as follows:

"[T]o permit imitation of a patent invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing. Such a limitation would leave room for—indeed encourage—the unscrupulous copyist to make unimportant and unsubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law."

While the rule concerning imitation is correctly stated in Graver it is not a rule applicable to the case before us because the change that has been made in the accused device is neither unimportant nor unsubstantial, and it definitely adds something to the art. It offers a new and different and certainly a much less expensive and less complicated method of removing the connected molds from the bed of the press for movement to the curing station.

The patented device teaches only one of the methods whereby the connected molds can be removed from the press. It teaches a method whereby the mechanism for removal is attached to the press body and is supported by the press apparatus while it holds the connected molds "apart from the press" for the instant prior to depositing the connected molds onto a dolly, conveyor belt or other mechanism, or even into the arms of a strong man for transportation to the curing station. Not only does the accused device present a substantial change to the patented device, but it also represents an important and most beneficial change for the reason that it combines the transporting dolly, the support for the curing operation, and the device for removal of the connected molds from the bed of the press into a single efficient device.

The record reflects that almost immediately after the accused device for removing the connected molds from the press apparatus was introduced by the defendant the plaintiff not only amended its patent to include the allegedly broader claims set forth in 1 and 7 of its patent, but in addition it converted its own machine to employ the principles of the accused device. Although the above would not be enough in itself to demonstrate noninfringement it is, nevertheless, strong evidence of the superiority of the accused method over the patented method, and is evidence that the change was neither unimportant nor unsubstantial. It demonstrates that the change added something that at least the plaintiff considered to be important to the art.

Removing the joined molds from the press in the manner demonstrated by the accused device is a method either overlooked by Barefoot or discarded by him in favor of the method of removal demonstrated by the description and diagrams of the patent. The assignees of Barefoot should not now be permitted to rescue an overlooked or discarded idea and republish it as their own on the theory of equivalency.

If I were to hold that the accused device is the equivalent of the patented device I would also be required to hold that any device that would remove the

joined molds from the bed of the press and "hold them apart" from the press would also be an infringement. This would mean that if an overhead derrick or hoist removed the joined molds from the press and held them apart from the press these devices would also constitute an infringement even though these same devices might hold the molds static while the tire was being vulcanized. I am not prepared to make such a holding, and I do not believe that Barefoot intended that such devices would constitute a duplication or equivalency of his invention. The language of the specifications, the diagrams, and the wording of the claims in question dictate the conclusion that Barefoot intended to protect by his patent claim a device that supports the joined molds "apart from the press bed" while attached to and as a part of the over-all press apparatus.

■ As stated in Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147, 156, the test of the rule of equivalency is to determine whether it "performs substantially the same function in substantially the same way to obtain the same result." See also Union Paper Bag Machine Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935, 936.

The patented device itself in the combination and reciprocating action of its component parts exerts the necessary power and employs the required leverage to remove the joined molds from the bed of the press and, while still attached to and dependent for strength upon the frame that also supports the press bed, holds the joined molds apart from the press to await delivery of the joined molds into or onto some device for transporting the molds to the curing station. The chief benefit and result contributed to the art by the patented device is the elimination of the requirement of manpower or other force external to the machine to remove the joined molds from the bed of the press and place them in a position where they can be easily and efficiently transported by whatever means to the curing station. This is not the same result accomplished by the accused device. Nor does the accused device function in substantially the same way to accomplish the same result.

The accused mechanism, operated by power external to the power of the press apparatus, namely, manpower, causes the joined molds to be removed completely away from and disconnected from the press bed causing the joined molds not only to be removed from the press bed but to simultaneously and as a part of the same movement or operation placed on the dolly which both transports the molds to the curing station and furnishes support to the molds while the tire is being cured.

Nothing connected with the press or the frame to which it is attached supports the molds "apart from the press" as is the case with the patented device. Once the tire molds are being supported "apart from the press" by the accused device the press is then ready for immediate use on another set of molds. This is not so with the patented device because while that device is supporting molds "apart from the press" a connected part of the apparatus is still in use and it is not free to handle another set of molds until the first set of molds has been shifted onto a dolly or other transporting device.

■ What is not specifically claimed is dedicated to the public. In the case at bar Barefoot might have claimed protection for an idea such as is manifested by the accused device, but he didn't and thus the idea belonged to the public at least as between Barefoot and the defendant. As stated in Sontag Chain Stores Co. v. National Nut Company of California, 310 U.S. 281, 60 S.Ct. 961, 84 L.Ed. 1204: "In the case under consideration the patentee might have included in the application for the original patent, claims broad enough to embrace petitioner's accused machine, but did not. This 'gave the public to understand' that whatever was not claimed 'did not come within his patent and might rightfully be made by anyone.' "

I find no equivalency of operation between the two devices in question. The accused device does not capture the principle of the patented device for which Barefoot sought monopolistic protection in the claims of his patent.

There are additional reasons to support a finding of non-infringement. The claims of the patent in suit call for "means" to remove a connected pair of mold halves from the press as a unit and to support the said pair apart from the press and return the said pair to operative position with respect to the said press platens. In his brief, plaintiff makes the following statement: "The court of custom and patent appeals regularly holds that 'a means for performing any function includes all of the elements contributing to such performance regardless as to the number or kind of such elements.'" Simpson v. Neracher, 191 F.2d 416, 422, 39 CCPA 709. The holding of the court of claims referred to by plaintiff must be read in the light of 35 U.S.C. § 112 which reads as follows:

"An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts *described in the specification and equivalence* thereof. July 19, 1952, c. 950, § 1, 66 Stat. 798." (Emphasis added).

Applying these rules to the case before us it is to be noted that the patent describes and shows only the swinging arm as the method of removing the joined molds from the press bed and "holding them apart from the press," and I am, therefore, forced to the conclusion that the limitation required by 35 U.S.C. § 112 must be read into the claims of Barefoot that the swinging arm (or its equivalent) is the device by which Barefoot intended to accomplish the removal of the molds from the press bed and supporting them while the holding device is still attached to the press apparatus. As stated in Del Francia, supra, 278 F.2d at p. 748:

"Since the disclosure is limited to this type of structure, the means element of the claim must be similarly so limited."

■ The claims demonstrate by their language Barefoot's intention that his apparatus must provide means to "support said pair (the joined molds) apart from the press *and* to return said pair to operative position with respect to said press." (Emphasis added). The critical means required to accomplish this result is that part of the apparatus designed to mechanically remove the joined molds from the press and return them to the press. The means element can not be expanded to include *any* device which may remove the molds from the press and return them to the press. It must be construed in light of the disclosure. Del Francia, supra. An inventor of an improvement "cannot by the mere use of the word 'means' appropriate any and all kinds of mechanism or devices which may perform the specified function, or any other mechanism or device than that which is described in the patent or * * its mechanical equivalent". Del Francia, supra, 278 F.2d p. 748.

Both the figures and description preceding the claims describe and show that the removal and return of the molds from the press bed is accomplished by means of a swing or rocker arm attached both by linkage and power to the press apparatus. In conformity with the authority of Del Francia, the claims in question must be limited to either that kind of a device or its equivalent. I do not find the accused device to be the same as the mechanism either described or shown by the patent, and as I have previously stated, I do not find the dolly of the accused device which is manually inserted between the upper and lower platens of the press to be the mechanical equivalent of the swinging lower platen of the patented device.

■ The question of the validity of the patent itself will be dealt with later in this opinion. For the moment it is sufficient to say that regardless of whether the combination of prior art was such

to deny patentability or if it was such a unique combination as to allow patentability, the patent does consist of a combination of the prior art for the retreading of tires.[1] Because it is such a combination the patent is limited to the specific combination, and if the accused device omits one of the material elements of the combination then it does not infringe. Dunkley Co. v. Central California Canneries, 7 F.2d 972 (C.A.9), certiorari denied 270 U.S. 646, 46 S.Ct. 347, 70 L. Ed. 778; Magnavox Co. v. Hart and Reno, 73 F.2d 433 (C.A.9). I hold that the swinging platen or some equivalent thereof which would be attached to the over-all apparatus in the invention is a material element of claims 1 and 7 of the combination of the patented device. This element has been omitted from the accused device. In the accused device the removal and return of mold units with respect to the apparatus is dependent upon the manual handling of a non-integrated device, to wit, a dolly. This is not covered by the claim definition of either the patented mechanism or any equivalent thereof which by the language of claims 1 and 7 would have to involve some mechanism attached to the apparatus in a manner that will enable the apparatus to furnish the basic support for the joined molds when they are supported "apart from the press." Brown v. Davis, 116 U.S. 237, 249, 6 S.Ct. 379, 29 L.Ed. 659.

To allow plaintiff's contention that its claims 1 and 7 cover a dolly which would "support said pair (molds) apart from the press and to return said pair to operative position with respect to said press platen, * * *" would be allowing plaintiff to go beyond the coverage of the invention to include a device for taking the molds completely away from the apparatus and returning them to the apparatus after the curing was completed. In effect, it would be allowing plaintiff to cover more than one mechanism by a

single claim where there is no language in either the claim or the description of the invention demonstrating that intention. Furthermore, such an interpretation would permit plaintiff to extend his invention to include a method, that is, not only the loading of the molds but also taking them away and returning them. To permit this extension would in effect reverse the action taken by Barefoot and the United States Patent Office prior to issuance of the patent in question.

Claims of a patent must be interpreted with reference to the history contained on the file wrapper. D and H Electric Company v. M. Stephens Mfg., 233 F.2d 879 (C.A.9). In this case the record reflects that Barefoot originally sought not only to create a monopoly of the apparatus, but also of a method (Exhibit D, pp. 12 and 13), and that the Patent Office examiner rejected the method claims as unpatentable (Exhibit D, pp. 20 and 38). As a matter of fact, in his rejection of the method claim the patent office examiner specifically noted that "returning the mold and vulcanized tire to open the mold and allow for removal of said tire" was unpatentable in view of the prior art. He said it "would not amount to invention." It is obvious from the text of his communication to Barefoot's representative that the invention was to be limited either to a "press mold combination" or a "heating means—mold combination" and that he did not intend to allow a combination or aggregation of the two concepts (Exhibit D, p. 38). The method claim having been eliminated by Barefoot, the assignees of Barefoot may not now expand Barefoot's apparatus claim to include a portion of the eliminated claim. Frederick R. Stearns & Co. v. Russell, 85 F. 218, 225 (C.A.6), cert. denied, 171 U.S. 689, 19 S.Ct. 886, 43 L.Ed. 1179. As stated in Stearns at page 225, "the complainant, as a condition of getting the patent in suit, expressly aban-

---

1. For a discussion of the tests to be employed to determine patentability of a combination of prior art, see: Great Atlantic and Pacific Tea Company v. Supermarket Equipment Corporation, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; and Radiator Specialty Company v. Richard Micek, 327 F.2d 554 (9th Cir. 1964).

doned and withdrew an application for just such a process patent, and he is thereby estopped from contending for any construction of his present patent which would, in effect, secure him the same thing."

Defendant asserts in his brief that plaintiff is attempting to reach not only the dolly, which would remove and return the molds from and to the press, but also the rack and curing station. I do not agree that plaintiff makes such a broad claim, but I do believe that he is attempting to reach the dolly or for that matter any device which will remove the molds from the press to the curing station and return them after curing to the press even though the device might constitute a separate mechanism. I will not allow claims 1, 3 or 7 to be so broad in their coverage.

There is additional reason found in the file wrapper for disallowing plaintiff the broad coverage he now claims for claims 1, 3 and 7. His original claims were much narrower and left no doubt that he intended his claims to be confined to a "swingable platen" attached to the apparatus (Exhibit D, p. 13). His original claim number 3 was later renumbered claim number 2 of the patent and that claim unequivocally specifies a swingable platen. Later Barefoot added claims 6 and 7 (which became claims 5 and 6 of the patent). These two latter added claims also left no doubt that he was seeking a monopoly on a swingable lower platen motivated by "means carried by said press" (Exhibit D, pp. 23 and 24). Later Barefoot presented claim 8 (which became claim 7 of the patent). This was the first time he claimed the "means" which is here in issue, and it is the first claim he filed which leaves uncertain whether he intended to stick with the swingable lower platen as the crux of his invention. However, the file wrapper disposes of that uncertainty because at page 42 of the file wrapper (Exhibit D) he stated: "Claim 8 carries the limitations contained within claims 3 and 6 inclusive and also brings out the fact that the lower halves can be releasably connected

to a respective one of the press platens for movement therewith." Thus Barefoot imposed upon claim 8 the same limitations he had previously recited for claims 3 and 6.

Barefoot made this representation to the Patent Examiner by an amendment filed February 10, 1959. By letter mailed May 6, 1959, the examiner advised Barefoot that he was responding to his amendment and he allowed the new claim. There is nothing in the record to indicate that he did not rely on Barefoot's representations that even though the idea was stated differently in the new claim 8, nevertheless, the new claim carried the swingable platen limitation of the prior claims 3 and 6.

Still later, Barefoot presented claim number 10 which became claim 1 of the patent. He advised the Patent Office that except for the substitution of a word, which is not here important, it was exactly like claim 8 that had been previously allowed.

Having represented to the examiner that in spite of the fact that the two new claims carried the reference to "means" and made no reference to a swingable lower platen, these new claims, nevertheless, carried the same limitations as the old claims that taught only the swingable lower platen, plaintiff can not now, after issuance of the patent, withdraw Barefoot's self imposed limitation. In effect, Barefoot made an agreement with the Patent Office, and his assignee may not now destroy the effect of that agreement. Thomas, et al. v. Simmons Co., 126 F.2d 743 (C.A.7, 1942), Dempster Bros., Inc. v. Borg-Warner Corp., 170 F.Supp. 488 (D.C.).

For the reasons above stated I find there has been no infringement.

Having reached the conclusion that there is no infringement, I come next to consideration of that portion of the pleadings which raise the question of the validity of the Barefoot patent. It becomes a question of whether the validity of a patent should be determined by the trial judge when in the same case he has al-

ready made a finding of non-infringement of that patent.

As observed by Chief Judge Learned Hand in Harries v. Air King Products Co. (2nd Cir.), 183 F.2d 158, 161:

> "In what cases a court may dispose of a patent infringement action upon the issue of non-infringement, recent decisions leave in some doubt, we must own."

In that case at page 161 he discusses Electrical Fittings Corp. v. Thomas and Betts Co., 2nd Cir., 100 F.2d 403, Cover v. Schwartz, 2nd Cir., 133 F.2d 541 and Altvater v. Freeman, 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed. 1450. Additionally, Judge Hand discussed the rule set forth in Sinclair and Carroll Co. v. InterChemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644, and the statement therein contained as follows:

> "There has been a tendency among the lower federal courts in infringement suits to dispose of them where possible on the ground of non-infringement without going into the question of validity of the patent. * * * The District Court in this case followed what will usually be the better practice by inquiring fully into the validity of this patent."

Judge Hand looked upon the quoted passage from the Sinclair case as being only a "cautionary admonition, to be followed when that is the more convenient course," and he states the rule as follows at p. 163 of the Harries decision in 183 F.2d:

> "We hold that it is open to a court to proceed as is most convenient, subject to the exception that, though the defendant has not infringed, claims may be so evidently invalid that the court should so declare."

It would appear, therefore, that whether the court should rule on the question of validity depends on the obviousness of the invalidity to the court, and if the patent is quite apparently invalid then the public interest is best served by the better practice of declaring the invalidity. And this would be so even though there is evidently no fixed requirement that the court make such a determination.[2]

The Ninth Circuit has heretofore passed on the question of the necessity of passing on validity when there is already a finding of non-infringement. In Kemart Corp. v. Printing Arts Research Laboratories, 201 F.2d 624, at page 634, Judge Bone stated:

> "A court may not, however, find a patent uninfringed and at the same time hold it valid, since a holding of validity would be a decision of a hypothetical case." See also Patent Scaffolding Co. v. Up-Right, Inc., 194 F.2d 457.

In a more recent decision of the Ninth Circuit on this point the District Court found non-infringement and also found the claims in question to be invalid and void. The Circuit Court struck from the District Court's opinion the finding on validity with the observation that, "A decision as to the validity of the patent should await a case which requires it." Del Francia v. Stanthony Corp., supra.

In the case before me it is not immediately apparent that the patent claims in question are invalid. A cursory study of the patent and the immediate success of the machine into which the patent was fabricated compared to prior art and development in the retreading business up to the date when the patented machine was first shown, augurs in favor of validity rather than invalidity. I do not, however, intend that this observation should in any way be interpreted as a finding on the question of validity. At most it can only be considered as a finding that the patent is not obviously invalid, and for that reason and in keep--

---

2. "To hold a patent valid if it is not infringed is to decide a hypothetical case." Altvater v. Freeman, 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed. 1450. Electrical Fitting Corp. v. Thomas and Betts Co., 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263.

ing with the rules heretofore stated, I do not, in this case, decide the question of validity of the patent in question.

Counsel for defendant will prepare Findings of Fact, Conclusions of Law, and a Judgment in accordance with this opinion. Court costs, but not defendant's attorneys fees, will be assessed against the plaintiff.