PRICE–PFISTER BRASS MANUFAC-TURING COMPANY, a corporation, Plaintiff,

v.

AMERICAN STANDARD INC., a corporation, Defendant.

No. 71–1832–DWW.

United States District Court,
C. D. California.
April 4, 1974.

Flam & Flam, Fred Flam, Encino, Cal., Fulwider, Patton, Rieber, Lee & Utecht, Robert W. Fulwider, John M. Lee, John D. Bauersfeld, Los Angeles, Cal., for plaintiff.

Thelen, Marrin, Johnson & Bridges, James M. Radnich, Randall L. Erickson, Los Angeles, Cal., Gottlieb, Rackman, Reisman & Kirsch, Jules P. Kirsch, New York City, for defendant.

## MEMORANDUM

DAVID W. WILLIAMS, District Judge.

Price-Pfister Brass Manufacturing Company is the owner of three patents which relate to single-handled mixing valves, now widely used in bath and kitchen installations. The Hinderer-Lyon patent No. 2,977,986 (hereinafter the '986 patent) discloses a faucet of the flat plate type having a ported valve seat cooperating with a sliding valve plate permitting volume and temperature control. The plate is limited to two modes of motion, angular for controlling the proportions of hot and cold water and radially through the seat for controlling the volume of flow. The flat plate is said to form a close tolerance fit of the parts to reduce leakage, a nagging problem. The Dornaus patent No. 3,324,884 (hereinafter the '884 patent) improves the '986 patent by calling for use of a ceramic valve seat and valve plate, instead of the steel parts used in the earlier patent. Plaintiff claims the ceramic further reduces leakage and increases the operational smoothness of the unit. The second patent limits motion of the operating handle to reduce shock loads against the valve plate and against the walls of the valve body and is said to increase the trouble-free service life of the faucet.

The third patent in suit is the Dornaus patent No. 2,476,149 (hereinafter the '149 patent) having a single claim and designed to use inlet water pressure to more solidly seal the valve seat and plate by forcing them into tight engagement. Plaintiff's products have enjoyed much commercial success.

American Standard Company is also a manufacturer of valve fittings for bath and kitchen installations and has produced a valve which it called the MOD I and a later improved version called the MOD II—both single-handled mixing faucets intended to provide the user the ability to control the flow and temperature of water by the use of one operating arm. The MOD I is constrained to two modes of motion permitting the valve plate to move angularly about an axis through the valve seat and substantially radially to that axis. The MOD II enables the two permitted modes of motion by use of trunnion pins in slots.

Plaintiff's products have been on the market in some form since 1959; defendant has sold its valves since approximately 1969. Defendant and its Schaible Company predecessor have been manufacturing "Schaible" single-handle faucets since 1954 but plaintiff does not allege this to infringe its patents.

In this litigation plaintiff contends that the MOD I infringes claims 1, 2, 3, 6, 7, 8, 18 and 19 of the 23 claims in the '986 patent; claims 1, 2, 4, 5, 7, 8, 9 and 10 of the '884 patent and the single claim of the '149 patent that MOD II infringes claims 1, 7, 8, 10, 19 and 20 of the '986 patent; claims 1, 2, 3, 8, 9 and 10 of the '884 patent; and claim 1 of the '149 patent. Plaintiff's contention, early on, that defendants had also infringed two other of its patents was withdrawn.

Defendant denies infringement and asserts that plaintiff's patents are unenforceable because they were anticipated by prior art (35 U.S.C. § 102); were obvious at the time of the invention to a person having ordinary skill in the art (35 U.S.C. § 103); are invalid for overclaiming (35 U.S.C. § 112 and Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L. Ed. 1008 (1938)); and that plaintiff's device merely constitutes a collection of old elements, well known in the art, with no introduction of a new change in function. Defendant further accuses plaintiff of fraud upon the Patent Office and Clayton Act § 7 violations, i. e. stifling competition through patent misuse.

The Court has been assisted by the usual battle of expert witnesses and by the industry of exceptionally capable counsel on each side. After long and careful review of the evidence I must conclude that the patents are valid against the challenges here asserted by defendant and that the MOD I and MOD II devices do *not* infringe.

I am aware of some opinions from this circuit which advise against going on to test validity, once the Court finds non-infringement. R. H. Baker & Co. v. Smith-Blair, Inc., 331 F.2d 506, 507 (9th Cir. 1964); Bacon American Corp. v. Super Mold Corp. of Cal., 229 F.Supp. 998, 1007 (N.D.Cal.1964). However, the opinion of Judge Duniway in Lockwood v. Langendorf United Bakeries, Inc., 324 F.2d 82, 91 (9th Cir. 1963) is helpful:

"The law is not entirely clear as to whether, in such a case as this, the court is required to adjudge the validity or invalidity of the patent in suit. Undoubtedly, it had the power to adjudge it invalid. (Altvater v. Freeman, 1943, 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed. 1450.) It appears, however, that it would usually be error to adjudge it valid, in the face of a finding of non-infringement. (Electrical Fittings Corp. v. Thomas & Betts Co., 1939, 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263; Altvater v. Freeman, supra). To do so, says the Supreme Court, would be to decide a hypothetical case.

"In Altvater, the Supreme Court sustained a judgment that held, on the complaint, that there was no infringement, and, on a counterclaim, that the patent was invalid. See also, Hawley Prod. Co. v. United States Trunk Co., 1 Cir., 1958, 259 F.2d 69. It is said in Sinclair & Carroll Co. v. Interchemical Corp., 1945, 325 U.S. 327, 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644 that it 'will usually be the better practice' to inquire 'fully into the validity of [the] patent.' However, Judge Learned Hand, in Harries v. Air King Prod. Co., 2 Cir., 1950, 183 F.2d 158, 162–163 expressed the opinion that this language 'was certainly not put in the form of a peremptory direction, but rather of a cautionary admonition, to be followed when that is the more convenient course * * *. We hold that it is open to a court to proceed as is most convenient, subject to the exception that, though the defendant has not infringed, claims may be so evidently invalid that the court should so declare.'"

I feel that in this case where the issue of validity was strongly litigated, and

where Clayton Act, § 7 charges were seriously urged, the Court should fully consider them.

## VALIDITY

■ Plaintiff is entitled to the advantage of the statutory presumption of validity (35 U.S.C. § 282) until clear and convincing proof of invalidity is shown. Moon v. Cabot Shops, Inc., 270 F.2d 539, 541 (9th Cir. 1959), cert. den. 361 U.S. 965, 80 S.Ct. 596, 4 L.Ed.2d 546 (1960). Defendant strongly urges that a body of prior art existed at the time of the issuance of the '986 patent which negatived novelty and invention. It places emphasis upon the existence of the Delta faucet (Patent No. 3,056,418) and the failure of plaintiff to bring this fact to the attention of the examiner, as well as plaintiff's failure to cite the Cochran patent No. 1,614,437.

Single-handled faucets were not new when Hinderer began his work on his patent. Other valves employed the concepts of the use of a single handle with two modes of motion for regulating water temperature and flow. They consisted of a valve body forming a cup or chamber containing the valve mechanism wherein a movable valve plate slid over a fixed seat containing an inlet port and an outlet port and a thrust member for holding the plate and seat in intimate contact with one another to minimize leakage of water. The unit allowed the passage of water into a mixing chamber and its movement to a spout from the outlet port. Plaintiff's product must be measured against prior art.

■ Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) instructed that the obviousness or non-obviousness of the subject matter of a patent is to be determined by pursuing the following line of inquiry: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue, and (3) the level of ordinary skill in the pertinent art.

■■ The validity of a patent cannot be upheld when it is merely a combination of known prior art elements. Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162 (1950). The improvement must be that of an inventor and not merely the work of a skillful mechanic. Hotchkiss v. M. Greenwood and Co., 52 U.S. (11 How.) 248, 267, 13 L.Ed. 683 (1851). Where each of the elements in the patented process was covered by the prior art the patent cannot stand. Bada Company v. Montgomery Ward & Co., 426 F.2d 8 (9th Cir. 1970).

■ "The fact that each element of a creation sought to be patented is found in the prior art does not negate novelty if the old elements are combined in such a way that as a result of the combining an improved, useful, and more advantageous innovation is obtained. Grinnell Washing Mach. Co. v. E. E. Johnson Co., 247 U.S. 426, 432, 38 S.Ct. 547, 62 L.Ed. 1196 (1918)." Shaw v. E. B. & A. C. Whiting Co., 417 F.2d 1097, 1101 (2d Cir. 1969).

It is not disputed that the '986 application failed to call the Patent Office's attention to the existence of the Delta valve during the prosecution of the patent, but defendant's assertion that that office failed to consider the Delta unit is unconvincing. That patent eventually issued as a result of an application by Adams and Perry filed in 1955, which was assigned to Examining Division 39 in the Patent Office and classified in Class 137 for examination purposes—the same division and examination classification to which the Hinderer '986 application was assigned. Examiners Weil and Mouzivares handled the '986 application at the same time they were processing the Adams-Perry Delta application and they cited the Cochran patent against Adams-Perry. They were therefore aware of Cochran as well as Adams-Perry when they considered Hinderer.

The Delta faucet has a spherical ball with two inlet holes and an outlet hole

mounted in a socket having two inlet ports and an outlet port. A handle secured to an operating arm and attached to the ball moves it in one mode of motion—in rotation.

The Cochran patent, cited to Adams-Perry, has a valve structure similar to Delta in that it is a ball valve with a triangular cam for confining the handle to move in a triangular boundary and to a single "off" position.

The Hinderer '986 patent relates to a single handle faucet incorporating a *flat* valve plate which is rotated and translated by a "simple mechanism" to control the volume of water flowing through the two inlet ports. The handle has one off position; its movement is confined within a triangular boundary, one apex of the boundary corresponding to the off position and each of the other two apexes corresponding to full volume of either hot or cold water. These objects are accomplished by a cam with which the flat valve plate cooperates.

While the handle of the Delta faucet is confined to move in a substantially triangular boundary and have a single off position, there is support for the argument that the Patent Office granted Hinderer a patent not because the handle had a single "off" position, but because of the novel flat plate type valve mechanism described in the claims, not a ball and socket valve such as was claimed in Delta.

■ The '986 patent meets the test of §§ 101 and 102(a) because nowhere in the prior art is the flat plate and flat seat mechanism identically disclosed. Ling-Temco-Vought, Inc. v. Kollsman Instrument Corp., 372 F.2d 263, 267 (2d Cir. 1967). This set Hinderer's device apart from the prior art. United States v. Adams, 383 U.S. 39, 48, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966).

Claims 1, 7, 8 and 19 of the '986 patent require a valve plate slidable on a valve seat and capable of two modes of motion, one angular about an axis normal to the seat for adjusting proportion of mix, and the other being radially of that axis for adjustment of the volume of the mix. These do not correspond to the valve plate and valve seat portions of the Delta faucet and do not read on its claims. Nor does the trunnion pin found in the Delta faucet provide an axis that is normal to the valve seat required by the claims.

Defendant's efforts to read Claims 2, 3 and 6 of the '986 patent on the Delta faucet in combination with the Paul and Busick patents are likewise unconvincing.

## DORNAUS '884 PATENT

■ The claims in issue call for a valve plate movable over a valve seat with radial and arcuate motion about an axis normal to the seat. They require that the operating arm have a pair of trunnion pins projecting from opposite sides of the arm and engaged in grooves formed in the valve body having stop projections on the arm; the trunnions support the arm for movement in an equitorial plane which is perpendicular to the axis through the seat about which the valve plate moves. There is a substantial difference between this and the single guide pin and groove in the Delta ball and socket. It is not pertinent to the bypass invention of the '884 patent.

## DORNAUS '149 PATENT

■ This single claim patent provides a seal retainer between the bottom of the valve seat and the faucet body, supporting three resilient rings which are larger than the size of the ports through the valve seat so that these areas are exposed to inlet fluid pressure which pushes the valve seat against the plate to form a seal and protect against leakage. It is not the design equivalent of the Delta faucet or other patents cited by defendant, which have differing seal arrangements. The '149 patent relies entirely on water pressure, not springs, to force the seat and plate to intimate contact. There is no merit to defendant's contention of obviousness under Section 103. Diamond Rubber Company of New York v. Consolidated

Rubber Tire Company, 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527 (1911).

I also find no substance to defendant's defense of overclaiming.

## CLAYTON § 7 DEFENSE

■ When plaintiff was prosecuting the '986 patent the examiner declared a Patent Interference between plaintiff and another application by one Frank Williams, President of Federal-Huber Company. This was settled by plaintiff giving Federal-Huber a royalty-free license under certain of plaintiff's patents including the patents in suit in 1958. Federal-Huber never manufactured under the patents in suit and in 1968 plaintiff purchased back the license it had given Federal-Huber. This was at a time when defendant, having negotiated unsuccessfully with plaintiff for a license for its MOD I device, began negotiating with Federal-Huber to either purchase its license or to become a supplier to defendant under the license.[1]

There is room for suspicion that plaintiff had an ulterior motive in buying back the Federal-Huber license but there is not present the quantum of proof that could show a Clayton Act, § 7 violation. Plaintiff and Federal-Huber began this transaction by trying to agree to an addendum tightening assignability of the license and it was when that effort failed that Frank Williams suggested that Price-Pfister purchase back the license for $5,000.00, which it did. There is no clear proof that plaintiff purchased back the license out of the fear that Federal-Huber would make a deal with American Standard.

## NON-INFRINGEMENT

### The '986 Patent

■ The patent owner has the burden of proving infringement. Magnavox Co. v. Hart & Reno, 73 F.2d 433, 434 (9th Cir. 1934). In a combination patent, every element of a particular claim is presumably essential and, therefore, every element of the claim or its functional equivalent, must ordinarily be found in the accused article. Lockwood v. Langendorf United Bakeries, Inc., 324 F.2d 82, 88 (9th Cir. 1963); Fraser v. City of San Antonio, Texas, 430 F.2d 1218, 1221 (5th Cir. 1970).

■ Plaintiff claims the primary object of '986 is the translation and rotation of the valve plate on the valve seat to adjust volume and temperature and the secondary object is the confinement of the handle to move within a triangular boundary and have a single off position. In its prosecution of the '986 patent plaintiff emphasized that Hinderer's patent differed from earlier art in achieving a single off position. This seemed to be an argument that claims 1, 2, 3, 6, 7 and 8 included cam mechanism limitation. The specification calls for a mixing valve comprising a flat valve plate that slides across a double ported flat seat causing translation of the plate to adjust volume and flow and a lever movable on a universal or ball joint in a triangular boundary.

As against this, the MOD I and MOD II valve plates have no holes that extend all the way through the valve plate and does not function in the manner claimed by the '986 claims. MOD I does not have a handle supported for ball joint movement, nor is its handle supported by the ball and socket joint. the MOD I and MOD II faucets do not have a cam mechanism for confining the handle within a triangular boundary with a single off position. Rather, they have an infinite number of off positions.

### THE '884 PATENT

The '884 patent is directed primarily to a stop arrangement for the operating arm comprised of trunnion pins confined within triangular cavities confining the operating handle to move within a triangular boundary and have a single off position. These features are not present in the MOD I and MOD II faucets; they have no triangular cam structure and no mechanism for confining the handle to move within a triangular

---

1. The contract between plaintiff and Federal-Huber forbade the latter to sell the license to anyone except as a part of a deal to sell all its single control faucet business.

boundary and to a single off position. There is a difference also in the shape of the connection in the MOD I and II devices between the operating arm and the valve plate.

### THE '149 PATENT

As stated earlier, the '149 patent has one claim that recites a seal container to reduce leakage. The MOD device has no separate seal retainer element located between one side of the valve seat and the bottom of the cup in which the seat is positioned. The cartridge which holds the seals in the MOD I and MOD II faucets are stationary, unlike the '149 seal retainer which is movable. There is significant functional difference. Finally, defendant's MOD II faucet has an operating arm with a round rather than a rectangular projectory which fits into a round rather than a rectangular socket in the back of the MOD II valve plate for connecting the arm to the plate.

Plaintiff shall take nothing by its complaint charging infringement and defendant shall take nothing by its counterclaim. Each side shall bear its own costs. Plaintiff shall prepare proposed findings and a proposed judgment within 20 days of the filing of this memorandum.